## ROBERTS ET AL. *v.* VONNEGUT ET AL.

[No. 8,645. Filed February 25, 1914. Rehearing denied May 26,
1914. Transfer denied March 3, 1915.]

1. CONTRACTS.—*Construction.—Priorities of Creditors.*—In deter-
mining the priorities of stockholders of a corporation who ad-
vanced money to be used as additional capital, and of creditors
who extended the time of payment of their claims in considera-
tion of such advancement, the contract entered into by such
stockholders and the one entered into by the creditors are to be
construed together. p. 153.

2. CORPORATIONS.—*Receivers.—Priority of Claims.—Burden of
Proof.*—Where the receiver of an insolvent corporation peti-
tioned the court to determine the priorities of stockholders who
had advanced money to the corporation, and of creditors who, in
consideration of such advancement, extended the time of the
payment of their claims, and the stockholders on intervening set
up facts to show that the money in the hands of the receiver was
a trust fund available to them over all creditors, to the extent of
the money furnished by them, and the creditors set up the con-
tracts relied upon to show their right to priority, the question as
to which set of interveners had the burden of proof did not enter
largely into the determination of the question, since, regardless
of the intervening petitions, it was the duty of the court to hear
and consider any competent evidence in passing on the receiver's
petition. p. 153.

3. EQUITY. — *Jurisdiction.* — *Priorities Between Creditors.* — The question of priority between creditors holding valid claims against the same party is one of equitable cognizance.   p. 155.

4. EQUITY.—*Principles and Maxims.*—He who seeks equity must do equity and come to the court with clean hands.   p. 155.

5. PAYMENT.—*Requisites and Sufficiency.*—*Notes.*—Anything is payment which is offered and accepted as such, and the giving of a promissory note governed by the law merchant is *prima facie* evidence of payment and conclusive in the absence of evidence that such was not the intention of the parties.   p. 156.

6. CORPORATIONS.—*Stockholders' Agreements.*—*Authority of Committee.*—Where, pursuant to an arrangement with creditors of a corporation, stockholders thereof entered into an agreement to advance money to prevent a receivership and appointed a committee to whom they assigned their stock and gave full power to manage the affairs of the corporation until the purpose should be accomplished, such committee had authority to bind the stockholders by accepting notes instead of cash for the amounts agreed to be advanced by some of them, and the stockholders could not insist that the agreement, which gave to the creditors priority over them to the extent of the money agreed to be advanced, never took effect because of the acceptance of such notes, although the agreement provided that it should not be effective until the full amount be paid into the treasury of the corporation, nor because the work of such committee was in fact left to only a portion of its members.   p. 156.

7. CONTRACTS. — *Acceptance.* — *What Constitutes Ratification.* — Where a creditors' agreement expressly authorized the committee therein named to act with a committee of the stockholders of an insolvent corporation, to determine when the agreement had been ratified by the creditors, and to deliver to the debtor corporation the evidence of the original claims and to cancel same upon the execution of extension notes, the inference arises, from the acceptance of the extension notes and the payment of two of same, that the arrangement was duly ratified.   p. 157.

8. EQUITY.—*Principles and Maxims.*—*Equality is Equity.*—Equality is equity when the parties are on the same footing, but where, for a valuable consideration, they voluntarily and knowingly enter into a contract which prefers one class and act in accordance therewith for a long period of time, neither party can complain of its enforcement, even though the whole scheme fails and results disastrously rather than beneficially as was intended.   p. 158.

9. CONTRACTS.—*Construction.*—Where necessary to the determination of controversies growing out of a contract, the court is

warranted in adopting the construction placed upon same by the parties thereto. p. 158.

10. APPEAL.—*Review.*—*Venire de Novo.*—A motion for *venire de novo* which related mainly to the court's finding that certain subscriptions to a corporation had been paid, but which failed to show that the payment was in cash, was properly overruled, where other facts found show that the committee to whom payment was made had authority to receive payment otherwise than in cash. p. 158.

11. CORPORATIONS.—*Insolvency.*—*Creditors.*—*Agreements.*—*Priorities.*—Under an arrangement between stockholders and creditors of an insolvent corporation whereby the former were to advance money for the use of the corporation, in consideration of which the latter were to cancel their original claims and accept extension notes in lieu thereof, the evidence was not insufficient to show a failure to ratify the arrangement so as to defeat the priority of the creditors, because of the fact that one creditor accepted extension notes without surrendering the original notes which it held, where it appeared that such original notes bore the names of certain stockholders as security, and the agreement provided that special arrangements could be made with creditors holding independent security. p. 159.

12. APPEAL.— *Review.*— *Findings.*— *Conclusiveness.* — Where the finding of the trial court, relative to certain agreements entered into by the stockholders of a corporation and its creditors for the purpose of avoiding a receivership, compels the inference that such agreements were thereafter in force at the time of the appointment of a receiver, contentions by appellant as to certain conditions precedent, though correct as legal propositions, are not available to procure a reversal. p. 160.

From Superior Court of Marion County (87,480) ; *Joseph Collier,* Judge.

Proceedings on the petition of the receiver of the Mais Motor Truck Company to determine the priorities of creditors, in which William H. Roberts and others, as stockholders of the insolvent corporation, and Franklin Vonnegut and others, as creditors, intervened. From the judgment rendered, William H. Roberts and others appeal. *Affirmed.*

*William L. Taylor, William P. Kappes* and *Louis B. Ewbank,* for appellants.

*Roscoe O. Hawkins, Gaylord R. Hawkins* and *Alexander G. Cavins,* for appellees.

FELT, J.—The receiver of the Mais Motor Truck Company, filed his report showing that the property of the company had been sold and that he had in his hands for distribution to the creditors $71,000. He also made recommendations for the allowance of several classes of claims in his report and requested the court to set them all for hearing on the question of priority and to determine the same and order payment accordingly.

Sometime prior to the appointment of a receiver the company was in embarrassed financial condition and to prevent the appointment of a receiver and keep the company in business as a going concern, on December 4, 1911, certain of the stockholders entered into a "New Capital Agreement", by which they undertook to provide $75,000 for the company. Contemporaneously therewith, the creditors of the company executed a "Creditors' Extension Agreement", by the terms of which they extended the time of payment of the company's indebtedness, by installments covering a period of thirty months. "Class A" of the creditors included merchandise and bank creditors existing on December 4, 1911, and are the appellees in this suit. "Class B" includes the subscribers to said "New Capital Agreement" who present claims on notes of the company given them in payment for the money furnished the company in pursuance of said agreement. "Class C" represents the claims of assignees of notes given the same as those in "Class B," and the creditors of "Class B" and the Central Trust Company of "Class C" are the appellants in this suit. There is no question as to the amount or validity of any of the claims.

In addition to the request of the receiver for the court to determine the question of priority and to direct him in the payment of the claims, the several claimants in classes A, B, and C, filed the intervening petitions in which they alleged the facts which they claimed entitled them to priority. On request duly filed, the court made a special finding

of facts and stated its conclusions of law thereon, which sustain appellees' claim of priority. The court rendered judgment on the conclusions of law, from which the appellants appeal and assign as error said conclusions of law; also the overruling of the motion for a *venire de novo* and the overruling of their motion for a new trial.

The substance of the finding of facts as far as material to the questions presented is as follows: That on December 4, 1911, the Mais Motor Truck Company, a corporation, was in embarrassed financial condition and its assets were insufficient to pay its debts; that a suit was then pending against it for the appointment of a receiver which the stockholders desired to avoid; that thereupon a conference was held by the stockholders and certain creditors of the company; that as a result of said conference, the stockholders agreed to advance and pay into the treasury of said company not less than $75,000, to be used in payment of the debts of the company and as working capital, which money was to be advanced on the condition "that certain of the creditors of the company would extend the time of payment of their respective obligations"; that the creditors of said company accepted said offer of said stockholders and thereupon two contracts were executed; that one of said contracts was executed by the stockholders, the substance of which is as follows: that the proposed creditors' extension agreement is conditioned on the company's procurement of not less than $75,000 for working capital with the further condition that the repayment of the money so provided shall be subject to the payment of extension notes to be issued to said creditors, "so that neither in the course of business of the company, nor in liquidation, or otherwise, shall any part of the principal of such new capital be repaid until such extension notes given creditors, shall have been fully paid"; that conditioned on "the ratification of said creditors' extension agreement by the creditors of the company", the undersigned agree to pay on demand after such extensions have

been executed by the creditors, the several amounts subscribed, respectively, provided not less than $75,000 shall be so subscribed; that notes of the company shall be issued to cover the amount so subscribed "but no part of the principal of said notes shall be paid until all of the existing indebtedness covered by said extension agreement shall have been paid in full, which fact shall be plainly stamped upon or inserted in each of said notes."

Said agreement further provides: "The subscribers hereto do hereby name, nominate, constitute and appoint the following named persons, to wit: J. V. Stimson, A. S. Lockard, H. G. Francis, W. M. Pearce, W. H. Roberts, Will H. Brown and Alfred W. Markham as a stockholders' committee; who shall have charge of carrying out the extension agreement of the creditors. Said committee shall continue in existence until the claims of existing creditors, and the money advanced for additional capital as above specified, both principal and interest, shall have been fully repaid, and shall have power and authority to demand the resignation of the present directors and to elect new directors in their stead; to exercise general supervision and management of the property and business of said company; to fill vacancies in the committee and to add to or reduce the number thereof as they shall deem expedient, and to do anything else which in its sound judgment and discretion shall be deemed advantageous to the company. Said committee is authorized to act in conjunction with a committee or committees appointed by the creditors, and to assign a share of stock in order to qualify anyone not now a stockholder to become a member of the board of directors of said company. A majority of said committee shall constitute a quorum for the transaction of business. * * * The undersigned do hereby severally agree to, and do hereby assign to said committee, and its successors and assigns, all of the shares of common stock in the Mais Motor Truck Company owned by them, or in which they have any interest, with full power and authority

to said committee to hold and vote the same at all regular and special meetings of the stockholders of said company, to the same extent and with like effect as though said stockholders were personally present and personally voted the same; and this power and proxy shall be absolute and irrevocable until the present indebtedness and the amount of the new capital advanced by the subscribers hereto shall have been fully repaid.  *   *   *   This is not to be binding until seventy-five thousand dollars ($75,000) is subscribed and paid in.'' Here follows list of subscribers and amount subscribed by each.

The court also found that said stockholders executed said contract on the condition that the same was not binding and their subscriptions were not enforceable against them until $75,000 was actually subscribed and paid in.

That the Creditors' Extension Agreement is in substance as follows:   That all creditors of said company holding claims amounting to not less than $100, on account of the inability of the company to pay its debts as they mature, and in consideration of advantages to the creditors, agree to extend the time of payment of their several claims, so that they shall be payable in ten equal installments, three months apart, beginning March 1, 1912, to be evidenced by the promissory notes of the company on forms used by the Capital National Bank of Indianapolis.   ''Upon the delivery of such extension notes all promissory notes or other written evidence of indebtedness now held by said creditors respectively shall be cancelled and delivered to said company.   *   *   * The foregoing extension is conditioned upon the procurement by said, The Mais Motor Truck Company of such amount of money as shall reasonably be required for working capital, estimated at $100,000 but which shall not be less than $75,-000, the foregoing extension not to be effective until at least $75,000 of such capital has been paid into the treasury of the company.   The foregoing extension is also conditioned upon the procurement of such new capital in such manner

as that the payment of the principal thereof shall in all respects be subject to the payment of the aforementioned extension notes, so that neither in the course of business of said company nor in liquidation or otherwise shall any part of the principal of such new capital be repaid until such extension notes have been fully repaid. * * * Said company may make special arrangements with any other creditor holding independent security, subject to the foregoing provision.'' A creditors' committee composed of Henry E. Riker, John B. Norholt, and James W. Lilly, ''appointed at a meeting of creditors at Indianapolis, December 4, 1911, is hereby assented to and affirmed by the undersigned, which committee shall represent the undersigned severally in all matters relating to said extension, and there is given over to it by the undersigned full power to determine for all the undersigned creditors all matters relating to the procurement of said new capital and the payment thereof into the treasury of said company, and the terms, provisions and conditions thereof, so that the same shall comply with the agreement, and with full power to determine when the agreement has been ratified by the creditors, and notice thereof has been given, the undersigned shall deliver to said company and said committee the evidence of their indebtedness against said company, and said committee, when said new capital has been procured and paid into the treasury as hereinbefore set forth, shall have the power to consummate said agreement by cancelling and surrendering such evidence of indebtedness and receiving from said company extension notes in accordance with this agreement, the same to be delivered by said committee to the undersigned respectively. * * * 9. This agreement shall not be effective unless the seventy-five thousand dollars ($75,000) of new working capital provided for in paragraph 3 hereof, shall have been paid into the treasury of the Mais Motor Truck Company within thirty days of the date hereof.'' Here follows the list of creditors aggregating $118,012.27.

The court also finds that copies of said agreement were sent to creditors for execution and that by mutual mistake clause 9 was omitted by the scrivener but that all parties intended said clause to be in all copies of the agreement; that in pursuance of said agreement certain stockholders subscribed and paid either by notes or in cash amounts as follows: Smith, $10,000; Pearce, $10,275; Stimson, $8,000; Roberts, $7,000; Williams, $7,500; Stearne, $5,275; McGowan, $5,000; Francis, $4,000; Innis, $2,500; Lockard, $5,000; Bookwalter, $1,000; Dollman & Dollman, $1,250; and Appel, $200. That where notes were given they were paid in cash when due and before the appointment of the receiver, except the Bookwalter subscription which was paid in merchandise. That Alfred W. Markham subscribed for $8,000 and said amount was not paid in cash, but the committee of the stockholders accepted from him in lieu thereof, his certain notes for said sum, which notes were payable to said company at a bank in the State of Indiana, on a specific date, carried interest and called for unconditional payment of said sum without discount or exchange, and said Markham is solvent. That said notes were not due when the receiver was appointed, and have not been paid. That under the order of this court said notes were sold by the receiver and assigned to the purchaser thereof. That the stockholders' committee did not require said subscribers to pay in cash, and in lieu thereof accepted the notes of appellants, Smith, Bookwalter, Stimson, Dollman, Francis, Roberts and Markham. That Messrs. Brown, Stimson, Pearce, Lockard and Francis of the stockholders' committee, accepted the appointment and served as active members thereof, collected the subscriptions, carried out the extension agreement with the creditors and managed the affairs of the company and in the respect issued to the subscribers their respective notes, and also issued to the creditors the extension notes and made the payment on the extension notes, and said named gentlemen had

full charge of the business of said company and the settlement of the affairs arising under said agreement between the stockholders and the creditors, from the date of said agreement until July 18, 1912, when the receiver of said company was appointed in this cause. That committeeman Lockard had immediate supervision of said subscriptions, and he collected thereon $66,000 in cash and as collected by him said funds were deposited in a separate account designated as "Mais Motor Truck Company special account." And from time to time drew checks thereon, payable to said company, until the whole amount of said fund was exhausted and the said funds were all commingled by said company, so that no part of said fund could be traced or was held by said company when the receiver was appointed, and no part thereof came into the possession of the receiver.

That notes were issued to said subscribing stockholders in violation of the provisions of said agreement without having stamped thereon or made a part thereof the agreement that such notes should not be paid until the other existing indebtedness of the company was paid in full; that there was collected in cash from said stockholders' subscriptions $66,-000 and $206.08 interest; that Bookwalter's note for $1,000 and $20 interest was treated by said committee as cash and "in lieu of cash accepted merchandise" of that value; that notes of Alfred W. Markham for $8,000 were accepted by said committee as cash and in payment of said subscriptions of said Markham; that stockholders Smith, Bookwalter, Stimson, Pearce, Dollman, Francis and Roberts had actual notice that all of said subscribers to said fund were not paying in cash and knew that notes had been accepted in payment; that Innis, Williams, Stearne and McGowan did not have actual knowledge that said committee was waiving payment in cash of said subscriptions, but said stockholders' committee had notice and knowledge thereof; that after February, 1912, and before the appointment of the receiver said

company paid to creditors of "Class A" on extension notes $32,658.46 and to creditors having claims less than $100 each, the total sum of $22,055.41; that after the execution of said agreements, said company contracted new obligations amounting to $38,437.57 and also paid some claims by giving merchandise to the creditors; that the notes of said subscribing stockholders have not been paid and are valid claims against the company; that on January 2, 1912, said stockholders by the committee named in said stockholders' agreement advised the creditors of "Class A" that the subscribers to said fund of $75,000 had complied with their agreement and thereupon each of said creditors accepted ten votes in lieu of their claims in accordance with the agreement aforesaid; that thereafter the first and second notes of said series were paid in full by said company and the other eight notes are due and unpaid; that before maturity, said Lockard, for value, assigned and indorsed his note given by said company for the amount paid by him to said fund, to the Central Trust Company and the same was accepted by said company with notice of the fact that the same was issued without having stamped thereon the condition of its payment being deferred until after the payment in full of the claims due the creditors of "Class A"; that the note of said J. V. Stimson for $8,000 was sold and transferred to Robert S. Stimson before maturity, for value, without notice or knowledge of the fact that said condition had been wrongfully omitted from said note. There is a similar finding as to the note of R. S. Innis for $2,500, of W. M. Pearce for $10,275, of H. G. Francis for $4,000, all of which notes were assigned to Samuel L. Innis.

On the foregoing findings of fact, the court stated its conclusions of law in substance as follows: (1) That all of said claimants have valid claims against said company. (2) That the Central Trust Company is not an innocent purchaser for value; that Robert S. Stimson and Samuel L. Innis are innocent purchasers for value, before the maturity

of the notes aforesaid, without notice of the omission therefrom of the condition aforesaid. (3) That the stockholders who executed said agreement and subscribed said fund of $75,000 do not have a prior right to be paid from the fund held by the receiver and the creditors of ''Class A'' are entitled to priority of payment from said fund over said subscribing stockholders but not as to the claims of Robert S. Stimson and Samuel L. Innis.

It is evident that the two contemporaneous contracts mentioned in the findings must be considered together in construing them and in determining the questions presented for decision. It is contended on behalf of appellants that said contracts were not in force when the receiver was appointed and therefore that they are not bound by the provisions which defer payment of their claims until after payment has been made of the claims of the creditors of ''Class A'' and that the allowance of their claims by the court places them on an equality with appellees. It is apparent that the correctness of this contention depends on the answer to the question, Were the stockholders' and creditors' agreements in force and binding upon appellants when the receiver was appointed? If they were in force, the court's conclusions on the question of preference was right. If they were not in force, appellants' contention must be sustained.

In determining the answer to this question, appellants contend that after their claims were found to be valid and allowed, the burden was on appellees to prove the facts essential to show the priority of their claims; that they are asserting rights under said contracts and the burden is on them to show the performance of the conditions precedent stipulated in the contract; that the provisions of the contracts to the effect that they should not be binding until $75,000 was subscribed and paid into the treasury of the company, and until the creditors ratified the agreement and surrendered and cancelled their claims for

which extension notes were issued, have not been complied with and that neither the findings of the court nor the evidence shows that these conditions precedent were complied with before the appointment of the receiver; that equality is equity and under this rule it is error to prefer appellees' claims over those of appellants.

On behalf of appellees, it is contended that considering all the provisions of the contracts and the evident object to keep the company in operation as a going concern, it is apparent that it was never intended by the parties that a strict and literal interpretation should be placed on the instruments; that such interpretation would defeat the practical ends the parties had in view in entering into the arrangement; that by the terms of the stockholders' agreement, they appointed a committee to carry said instruments into effect and gave them full power and authority as to all details necessary to the accomplishment of that purpose; that for the purposes of the questions presented by this appeal, said committee became and was the company and represented appellants in all that was done in connection with its business subsequent to the execution of said agreements; that the acts and knowledge of said committee were the acts and knowledge of appellants; that the full amount of $75,000 was subscribed and paid into the company; that the committee had power to accept notes instead of cash and accepted notes in payment of part of the stockholders' subscriptions; that appellants, by their representatives, having accepted the notes as payment, can not now be heard to deny the fact of payment; that if the acceptance of notes was wrong, it was the wrong of appellants and in a court of equity a party will not be permitted to take advantage of his own wrong. Appellees also contend that their notes and said contracts show them to be preferred creditors over appellants and that having made this *prima facie* case, the burden was on appellants to overthrow it and they have failed so to do.

The receiver by his own petition asked the court to determine the question of priorities. The appellants set up facts to show that the money in the hands of the receiver was a trust fund available to them over all creditors, to the extent of the money furnished by them in pursuance of the aforesaid agreements. Appellees set up the contracts and the arrangement entered into and carried out, up to the time the receiver was appointed, and rely on the provisions of said contracts to sustain their claim of priority. It is apparent that these intervening petitions did not change the issue or add to or detract from the duty of the court made manifest by the petition of the receiver. The petitions served the practical and useful purpose of informing the court and the parties of the respective claims of the several claimants, but with, or without, the intervening petitions, it was the duty of the court to determine the question of priority and to hear and consider any competent evidence pertinent to that question. In this situation, the question of the burden of proof does not enter largely into the determination of the question. The controlling proposition is the effect of the two contemporaneous contracts entered into by certain stockholders and by the creditors holding claims of a hundred dollars or more. If these contracts were in force and binding on appellants, the judgment should be affirmed, otherwise it should be reversed, for we find no other questions of controlling effect.

The question of priority between creditors holding valid claims against the same party is one of equitable cognizance. He who seeks equity must do equity and come to 3. the court with clean hands to demand equitable relief. This case presents some equitable features on both sides and in a measure involves the balancing 4. of equities. There is an apparent hardship in denying appellants the right of equal distribution since the attempted resuscitation of the company by their money

failed.   But the question of hardship can not be considered
if the contracts are shown to be in force for that question
is eliminated by the terms of both contracts.   There is little
room for doubt that the stockholders' agreement gives al-
most plenary power to the committee named therein by
appellants.   Anything is payment which the one obli-
gated offers as payment and the one to whom payment
is due accepts as payment.   The giving of a promis-
sory note governed by the law merchant, is *prima facie* evi-
dence of payment and conclusive in the absence of evidence
that such was not the intention of the parties.   *Bradway*
v. *Groenendyke* (1899), 153 Ind. 508, 510, 55 N. E. 434;
*Sutton* v. *Baldwin* (1896), 146 Ind. 361, 364, 45 N. E. 518;
*Weston* v. *Wiley* (1881), 7,8 Ind. 54, 56.   The facts found
show that the committee accepted bankable notes in
payment of the stockholders' subscriptions and in our
view of the case there are at least two reasons why
appellants can not now successfully controvert the question
of the payment of the $75,000.   (1) The stockholders'
agreement confers power on the committee sufficient to en-
able it in its discretion to accept notes as payment instead
of cash.   The committee was empowered to carry out the
extension agreement of the creditors; to demand the resigna-
tion of the directors and elect others in their stead; to exer-
cise general supervision and management of the property
and business of the company; to fill vacancies in the com-
mittee and to add to or reduce the number thereof; to con-
tinue in existence until the claims of existing creditors and
the money advanced by the stockholders shall have been
fully repaid "and to do anything else which in its sound
judgment and discretion shall be deemed advantageous to
said company."   (2) Appellants created the committee and
put it in charge of the business of the company and the work
of carrying out said agreements.   The committee undertook
the work and continued from December, 1911, to July 18,
1912.   It issued notices to appellees that the $75,000 sub-

scribed by the stockholders had been paid, executed the extension notes to creditors holding claims of $100 or more and the notes to appellants to reimburse them for the $75,000 subscribed by them. The fact that much of the work of the committee was left to one or a few of the members does not show that the things done were unauthorized. So long as the committee assumed to act and did not exceed the power conferred by the stockholders' agreement, appellants are not in a position to question the validity of their acts as against appellees. The facts found show that the arrangement continued up to the time the receiver was appointed and the appellants are not now in a position to come into a court of equity and successfully deny the authority of the committee to accept notes in part payment of the stockholders' subscriptions.

The stockholders accepted the notes issued to them by the committee, without question, and had general knowledge that the committee was exercising the power given it by the contract which created it. Under such arrangement, it was not contemplated that each stockholder should at all times be advised as to all the details of operation and management of the business entrusted to the committee.

The finding shows the acceptance of the extension notes by appellees and the payment to them by the committee of the first two notes of the series in pursuance of the provisions of the two contracts aforesaid. The creditors' agreement expressly delegates to the committee named therein to act in connection with the stockholders' committee, power and authority to determine when said agreement had been ratified by the creditors and authorized it to deliver to the company the evidence of the original claims of said creditors and to cancel the same. From these facts the ultimate fact of ratification of the arrangement made by the stockholders and creditors arises as a necessary inference. *Behler* v. *Ackley* (1909), 173 Ind. 173, 179, 89 N.

E. 877. By the terms of the contract, the acceptance of the extension notes extinguished the original debts and in substance, if not in technical form, cancelled the original claims against the company. Furthermore the finding shows that the creditors of "Class A" presented claims based on the extension notes and have made no claim based on the original indebtedness, except as represented by such notes.

Equality is equity when the parties are on the same footing. But where they have voluntarily and knowingly for a valuable consideration entered into a contract which

8. prefers one class, and the parties to the agreement have for a long time thereafter continued to act in accordance therewith, neither party to such agreement is in a position to complain of the enforcement of such contract and the fact that the whole scheme fails and results disastrously rather than beneficially as was intended, is not sufficient reason for the claim that the executed contracts are not binding upon the parties thereto. The facts of this case show that the parties to said contracts by their duly authorized committee placed a construction on said agreements by which notes were received the same as cash in payment of the subscriptions of said stockholders, and that after such payment had been made by cash and notes they continued to recognize the contracts and acted in pursuance of the provisions thereof up to the time the receiver was appointed. In view of all the provisions of said

9. agreements and the apparent object of the parties thereto, on such a state of facts, the court would be warranted, if necessary to a decision of this case, to adopt the construction placed upon said instruments by the parties themselves, which would lead to the conclusion that the contracts were in force and binding on the parties thereto.

The motion for a *venire de novo* relates mainly to the finding in regard to the payment of the subscriptions of

10. Markham and Bookwalter. The finding shows payment, but not all in cash. What we have said in dis-

cussing the finding and conclusions of law thereon indicates that, in our view, the finding is sufficient to show a payment of the $75,000 including the subscriptions of Bookwalter and Markham, and it follows that the court did not err in overruling the motion for a *venire de novo*.

Many of the questions presented by the motion for a new trial are in effect disposed of by what we have already said in this opinion. The contention that there is no evidence tending to show ratification of the extension agreement and cancellation of the debts for which extension notes were given is untenable. The facts already indicated show that the court had before it, evidence from which the facts of ratification and cancelation may reasonably have been inferred. The evidence warranted the inference that Lockard was authorized by the committee to carry on the work the committee was empowered by the stockholders to do.

It is especially urged that there is no evidence tending to show that the Capital National Bank with a claim of $56,000 complied with the contract by accepting extension notes and surrendering its original obligations. The evidence shows that the bank signed the extension agreement and received the two instalments paid by the company the same as the other creditors of "Class A"; that some of the appellants were security on the notes held by the bank and for that reason the bank did not surrender its original notes but credited on those notes the instalments paid. The creditors' extension agreement provides that the company may make special arrangements with creditors holding independent security. Considering this provision in connection with those conferring authority on the stockholders' committee, the evidence was sufficient to warrant the inference that the arrangement with the bank was in substantial compliance with the contracts, and to the extent of the instalments paid was directly beneficial to those of appellants who were liable on the notes held by the bank. The committee in making such arrangement did not exceed the

authority given or violate the provisions of the contract. It was a practical arrangement in pursuance of a reasonable construction of the contract as to the creditors holding special security.

There are other details suggested in regard to the motion for a new trial but they are not of controlling effect. Our examination of this case leads us to the conclusion that any intervening errors or irregularities are not of vital importance unless they tend to show that said contracts were not in force and binding on appellants, and we find no such errors. The contracts either were or were not binding on appellants when the receiver was appointed.

The finding of the court compels the inference or conclusion that the contracts were in force and therefore the contentions of appellants as to conditions precedent while correct as legal propositions are not available to reverse the judgment in this case, for notwithstanding all that is presented to the contrary we are of the opinion that on the facts of this case the stockholders' agreement and creditors' extension agreement are shown to have been in full force and effect and binding on appellants when the receiver was appointed.

Judgment affirmed.

NOTE.—Reported in 104 N. E. 321. As to when stockholders may maintain suits against officers and agents to call them to an accounting or to set aside their acts, see 41 Am. Dec. 367. As to payment by commercial paper, see 35 L. R. A. (N. S.) 1. As to preference among creditors given by insolvent corporations, see 22 L. R. A. 802. See, also, under (1) 9 Cyc. 580; (2) 10 Cyc. 1263; (3) 16 Cyc. 106; (4) 16 Cyc. 140, 144; (5) 30 Cyc. 1197; (8) 16 Cyc. 137; (9) 9 Cyc. 588; (10) 38 Cyc. 1990; (12) 38 Cyc. 1987.