Patsy A. **BALLARD**, Michael H. Ballard and Sandra K. Ballard, Appellants–Defendants,

v.

Dallas Edward **HARMAN**, Appellee–Plaintiff.

No. 52A02–0001–CV–40.

Court of Appeals of Indiana.

Oct. 17, 2000.

Rehearing Denied Jan. 3, 2001.

412

Patrick J. Roberts, Roberts Law Firm, Peru, Indiana, Attorney for Appellants.

Jeffry G. Price, Elizabeth G. Price, Peru, Indiana, Attorneys for Appellee.

## OPINION

BAKER, Judge

Appellants-defendants Patsy, Michael and Sandra Ballard (collectively, the Ballards) appeal the trial court's judgment in favor of appellee-plaintiff Dallas Harman with respect to his action against them to quiet title and for damages involving a

certain tract of real estate. Specifically, the Ballards assert that: 1) the trial court erred in quieting title to the real property in Harman's favor because he failed to prove the elements of adverse possession; 2) it was error to award Harman any damages for the replacement of trees that Michael had cut down on the property; and 3) the grant of an injunction against the Ballards was improper.

Harman also cross-appeals, claiming that the trial court erred in failing to award him treble damages against the Ballards and an amount for attorney's fees. Harman further asserts that the trial court erred in denying his request for a prescriptive easement on a portion of the property that he purportedly acquired by adverse possession.

## FACTS

Harman is the owner in fee simple of a two-acre tract of land in Miami County that he purchased in 1978. A diagram of this property showing the boundaries along with neighboring plats and their respective owners is appended to this court's opinion.[1] As the result of a surveying error, the warranty deed Harman received setting forth a description of the property was incorrect. When Harman acquired the real estate, two easements were also granted in his favor. The first granted him the right to a twenty-five-foot road easement across some unimproved lands that were owned by a number of other individuals. Harman laid gravel on that property, traveled the drive on a daily basis and mowed the grass around the trees. The second easement was an encumbrance upon Harman's property to permit his neighbors to access the lands located to the south of his property.

In 1979, Harman planted fifty cedar trees on the property to the west of some iron stakes that had been placed on the property as a result of a previous survey.

The land in question was a strip that measured 5 feet by 209 feet. Harman believed that the trees were located on his tract based on a survey that had been performed prior to his purchase of the land. Harman proceeded to fertilize, water and maintain the trees until 1997.

After Harman had planted the trees, the Ballards, who owned approximately twenty-five acres of property located immediately to the east of Harman's property which they acquired by warranty deed in 1975, bulldozed part of an old fence located close to the boundary between the two properties. Patsy, her husband, Richard, and their two sons, Patrick and Michael, lived on their land and farmed it until Richard died. Patsy eventually gave each of the boys a one-acre tract to build homes for their families. Patsy also had the land surveyed and established an easement for ingress and egress to the boys' homes. The attached diagram shows that part of the easement is twenty-five feet in width off the west side of Patsy's property adjacent to the lands which Harman was granted an easement interest. The diagram also illustrates that portion of the property where Harman sought to acquire an easement by prescription through adverse possession.

The eastern line of the disputed tracts lies approximately twenty-six feet from some REMC utility poles located on the lands immediately to the west of the twenty-fivefoot easement. Those poles are located on another individual's real estate, and the county records show a drawing with the utility poles located to the west of the driveway easement. It was the REMC's policy not to place utility poles on road easements.

In 1997, the Ballards requested Greg Deeds, the Miami County surveyor, to prepare a survey showing the western boundary of their property. Deeds had also

1. The diagram is a copy of Harman's exhibit ten that was introduced into evidence at trial. Record at 214. Like Harman, the Ballards have also included a copy of this exhibit in their brief filed with this court. *See* Appellants' Brief at 13.

performed a survey on the one-acre tract for the Ballards in 1993 pursuant to Mike Ballard's request. Deeds's 1997 survey revealed that the trees Harman had planted were located on the west side of the Ballards' property. Thus, the surveys performed by the Ballards and Harman indicated that the ownership of the two parcels overlapped.

On November 20, 1997, Michael, in reliance upon the surveys that Deeds had performed, trimmed the bottoms of the cedar trees over Harman's objection. Also during that month, Michael placed fence posts across Harman's right-of-way.

Approximately one month later, Harman's counsel sent written notice to the Ballards of his claim to the ownership of the trees and the blockage of the easement. Notwithstanding such notice, Michael entered the property on December 20, 1997, and cut down forty-one trees that had been planted which had grown to nearly twenty feet. Harman then obtained an estimate from Larry Hoffman, the owner of the nursery where the trees had been purchased. The total of the $17,302 estimate represented the replacement cost of the trees and the restoration of the land.

On July 17, 1998, Harman filed an amended complaint[2] to quiet title to real estate and easement rights. He alleged that the Ballards trespassed upon his land and committed mischief by intentionally cutting down and destroying the forty-one cedar trees. Thus, Harman requested that he be awarded treble damages and attorney fees. He also sought injunctive relief, claiming that the Ballards should be permanently enjoined from trespassing upon his easement and interfering with those rights and they should be required to remove the fence posts that they had placed on the property. Record at 57. Finally, Harman requested the trial court to find a prescriptive easement in his favor with respect to a portion of the property that should have been described and in-

cluded in the original survey but was not. Thus, Harman claimed entitlement to this remaining portion of the easement that had not been included in the original survey because he satisfied all the requirements of adverse possession. R. at 56–57.

Prior to trial, the Ballards filed a motion for findings of fact and conclusions of law pursuant to Ind. Trial Rule 52. Following a bench trial which concluded on June 1, 1999, Harman was awarded damages in the amount of $17,302, which represented the cost of replacing the trees that Michael had cut down, along with the costs associated with restoring the land. The trial court denied Harman's request for treble damages and attorney's fees, inasmuch as it concluded that Ballard believed that he was the owner of the property when he removed the trees. Thus, the trial court determined that Ballard did not possess the *mens rea* sufficient to commit the act of criminal trespass. The trial court also concluded that Harman was not in possession of the one-half-acre plot for the twenty years required to establish a prescriptive easement. Thus, that portion of the property was quieted in the Ballards' favor. Additionally, the trial court quieted title in Harman's favor where the trees had been planted and issued a permanent injunction in his favor enjoining the Ballards from placing materials or obstacles upon Harman's real estate. The Ballards now appeal the trial court's judgment and Harman cross-appeals, contending that it was error to refuse his request for treble damages and attorney's fees. Harman further maintains that the trial court erred in not finding that a prescriptive easement existed in his favor.

## DISCUSSION AND DECISION

### I. Standard of Review

■ We initially observe that Ind. Trial Rule 52(A) provides that "[o]n appeal of claims tried by the court without a jury

---

**2.** Harman's original complaint was filed on March 5, 1998. R. at 22–30.

... the court on appeal shall not set aside the findings or judgment unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." This court engages in a two-tiered standard of review when applying this standard. *Wagner v. Estate of Fox,* 717 N.E.2d 195, 200 (Ind.Ct.App.1999). First, we consider whether the evidence supports the findings, construing the findings liberally in support of the judgment. *Id.* Findings are clearly erroneous only when a review of the record leaves us firmly convinced that a mistake has been made. *Id.* Next, we determine whether the findings support the judgment. A judgment is clearly erroneous when the findings of fact and conclusions thereon do not support it. *Id.* In applying this standard, we neither reweigh the evidence nor judge the credibility of the witnesses. Rather, we consider the evidence that supports the judgment and the reasonable inferences to be drawn therefrom. *Id.*

## II. The Ballards' Claims

### A. Adverse Possession

The Ballards first contend that the trial court erred in quieting title to the strip of property in Harman's favor where the trees had been planted. Specifically, the Ballards attack the trial court's conclusion that Harman met his burden in demonstrating adverse possession over that portion of the property.

█ We initially observe that the statutory period necessary to achieve adverse possession is ten years. IND. CODE § 34-11-2-11.[3] The elements necessary to establish such a claim are as follows: 1) actual possession; 2) which is visible; 3) open and notorious; 4) exclusive; 5) under a claim of ownership; 6) hostile to the record owner; and 7) continuous for the statutory period. *Williams v.*

*Rogier,* 611 N.E.2d 189, 193 (Ind.Ct.App. 1993), *trans. denied.* Adverse possession cases are fact-sensitive and must be decided on an individual basis. *Id.* at 195. Once a claimant has sustained his burden as to adverse possession, title to the disputed real estate is acquired by operation of law and the original owner's title is extinguished at that time. *Snowball Corp. v. Pope,* 580 N.E.2d 733, 734 (Ind.Ct.App. 1991).

█ In addressing the Ballards' claim that that there was no evidence that Harman satisfied the requirements of adverse possession, we note that the record demonstrates, and the trial court found, that Harman planted the trees in 1979 and watered and maintained them until Michael cut them down in 1997. The location of the trees was based upon a number of stakes which had been placed on the property by a former surveyor. Harman also occasionally fertilized the trees and trimmed them. The Ballards were aware of the trees and they did not object to their existence for nearly twenty years. No other individual claimed ownership or a possessory right to the area where the trees had been planted, and notice of Harman's claim of ownership to the trees and land was given to the Ballards in a letter from his trial counsel in December 1997.

Harman never disavowed his right to possess that property from the time that he had planted the trees. Additionally, Harman planted the trees just west of the old fence line which had been located close to the boundary between the properties. While the Ballards assert that Harman's mere reliance upon an incorrect placement of markers that was not communicated to them fails to establish a claim of right or claim of ownership, such an argument amounts to a request for this court to reweigh the evidence which we will not do. In sum, the record reflects that Harman presented sufficient evidence of notorious,

---

**3.** The predecessor statute was codified at I.C. § 34-1-2-2 and was effective prior to July 1, 1988.

exclusive, and open and visible possession for the required statutory period to satisfy his burden of proof as to adverse possession. Thus, there was no error.

### B. Damage Award

The Ballards next assert that the trial court erroneously awarded Harman damages for replacement of the trees and restoration of the land. Specifically, they claim that the damage award must be vacated because Harman failed to offer proof of those damages at trial.

■■■ We note that this court will sustain the trial court's award of damages so long as the amount is supported by evidence in the record. Additionally, no particular degree of mathematical certainty is required in awarding damages. *Colonial Discount Corp. v. Berkhardt,* 435 N.E.2d 65, 67 (Ind.Ct.App.1982). The computation of damages, if supported by any evidence in the record, is strictly a matter within the trial court's sound discretion. *Smith v. Glesing,* 145 Ind.App. 11, 248 N.E.2d 366, 371 (1969). In *Neal v. Bullock,* 538 N.E.2d 308, 309 (1989), this court held that the proper measure of damage for the destruction of trees upon real estate would be the cost of restoration. If the tortfeasor fails to present evidence under any other measure of damage, any issue utilizing such measure is waived. *Id.* at 309.

■■■ In the instant case, the trial court found that Ballard intentionally destroyed forty-one of the fifty trees that Harman had planted on the property. R. at 5. As discussed above, the evidence demonstrated that Harman acquired this portion of the property through adverse possession. At trial, Harman presented the testimony of Larry Hoffman, the owner of the nursery, who acknowledged that the cost of replacing the trees amounted to $17,302. The Ballards offered no evidence of the "before and after" value of Harman's real estate, and trial counsel vigorously cross-examined Hoffman regarding his estimate of the replacement and restoration costs.

Inasmuch as the award was within the scope of the evidence and the Ballards did not present any evidence contradicting Hoffman's estimate of replacing the trees, the trial court did not err in awarding Harman that amount. *See id.*

### C. Issuance of Injunction

The Ballards next contend that the trial court erred in granting an injunction in favor of Harman. Specifically, they maintain that the injunction ordering them to refrain from placing anything on Harman's property was erroneous because it was based only upon speculation and was without a factual basis.

■■■ An injunction is a judgment of prospective application subject to the issuing court's continuing supervision. *Hvidston v. Eastridge,* 591 N.E.2d 566, 572 (Ind.Ct.App.1992). The issuance of a permanent injunction is limited to prohibiting injurious interference with rights. *Soc. Serv. v. Hospitality House,* 704 N.E.2d 1050, 1061 (Ind.Ct.App.1998). A trial court may issue an injunction in order to prevent a continued trespass. *Selvia v. Reitmeyer,* 156 Ind.App. 203, 295 N.E.2d 869, 875 (1973). We also note, however, that if an injunction is overbroad or if it becomes an instrument of wrong through changed circumstances, it is subject to modification through the court's continuing equity jurisdiction. *Id.*

■■■ In the instant case, the trial court's injunction against the Ballards provided that "the defendants are further permanently enjoined from placing any other materials or obstacles upon the ... real estate." R. at 12. The record demonstrates that after Michael cut down all of the trees and the boundary dispute became apparent, the Ballards proceeded to place a number of metal fence posts at the edge of the gravel driveway used by Harman to access his property. In light of Michael's conduct involving the destruction of the trees and the subsequent placement of the fence posts, we cannot say that the

trial court erred in issuing the injunction to prevent any further damage to Harman's property. Moreover, inasmuch as we have determined that Harman was entitled to the disputed area through adverse possession, the Ballards have no ownership interest in that property. Thus, the trial court's issuance of a permanent injunction was reasonable under the circumstances presented here.

### III. Harman's Cross-appeal

#### A. Treble Damages

On cross appeal, Harman urges that the trial court erred in refusing to award him treble damages. Specifically, Harman maintains entitlement to such damages because the evidence demonstrated that Michael committed the offense of trespass when he entered the land and destroyed the cedar trees.

In accordance with the treble damages statute, IND. CODE § 34–4–30–1,[4] "If a person suffers a pecuniary loss as a result of a violation of I.C. 35–43, he may bring a civil action against the person who caused the loss for: (1) an amount equal to three (3) times his actual damages; (2) the costs of the action; and (3) a reasonable attorney's fee."

 In resolving Harman's claim, we note that the trial court concluded that the Ballards had trespassed upon the property. However, the evidence at trial unequivocally established that Michael was acting in accordance with the prior surveys that had been performed on the property. Specifically, those surveys showed that the trees Michael had destroyed appeared to be on his mother's property. Moreover, Harman took no action to assert that the

trees were on his property even after Michael had trimmed them. Thus, no evidence was presented at trial establishing that Michael had formed the requisite intent to violate I.C. § 35–43 as required by the treble damages statute. Inasmuch as the evidence supports the trial court's conclusion that Michael had taken the action under a claim of right, there was no error in concluding that Harman was not entitled to treble damages or attorney's fees.[5]

#### B. Prescriptive Easement

Harman next maintains that the trial court erred in denying his request for a prescriptive easement because a survey conducted on the property erroneously failed to include a portion of the easement that had been originally granted to him. Specifically, Harman maintains that the requirements of adverse possession were satisfied with respect to this portion of the property, and he was, therefore, entitled to an easement by prescription.

 As with adverse possession, the claimant of a prescriptive easement must establish that the use be adverse, actual, exclusive open, notorious, continuous, uninterrupted and under a claim of right. *North Snow Bay, Inc. v. Hamilton,* 657 N.E.2d at 423 (Ind.Ct.App.1995). Moreover, the claimant is required to demonstrate that the adverse possession of the land had occurred over a twenty-year period. IND. CODE § 32–5–1–1. The existence or non-existence of a prescriptive easement is a question of fact. *North Snow Bay, Inc.,* 657 N.E.2d 420, 423. "Tacking," the continuous use of the easement by predecessors in title, may be added to the use of the present claimant to

---

**4.** The current version of this statute appears at IND.CODE § 34–24–3–1, which became effective on July 1, 1998. The revised version contains no substantial changes with respect to the portion of the statute cited above.

**5.** In addition to our discussion above, we note that this court had the occasion to construe the treble damages statute in *Burgett v. Haynes,* 572 N.E.2d 1296 (Ind.Ct.App.1991).

In that case, we held that it rests within the trial court's discretion to determine the amount of damages that should be awarded when an action is brought under that statute. Thus, even if Harman had proved that Michael had committed a violation of I.C. § 35–43, there is no absolute entitlement to an award of treble damages.

satisfy the twenty-year requirement regarding a prescriptive easement. *Bauer v. Harris,* 617 N.E.2d 923, 927 (Ind.Ct.App. 1993). The burden is on the party asserting a prescriptive easement to establish each element of the claim. *Monarch Real Estate Co. v. Frye,* 77 Ind.App. 119, 133 N.E. 156, 158 (1921).

 In the instant case, the trial court found that Harman was not entitled to a prescriptive easement because he failed to show anything but an intermittent permissive use over the disputed property. R. at 11. While Harman maintains that he was entitled to an easement by prescription in light of the "tacking" that occurred on the property, the evidence at trial demonstrated that the lands located to the north of Harman were not occupied. Moreover, Harman's argument that his neighbor's use of the property should be calculated as part of the twenty-year period is unavailing because that individual was not a party to this action and was not a predecessor with respect to title over the property. Additionally, Harman made no showing that his neighbors used the property. The totality of the evidence reveals that it was only Harman who drove his vehicle outside the original easement that encroached upon the Ballards' lands. Moreover, Harman did not use the land for the statutory period prior to being stopped by the Ballards' placement of the stakes on the property. Under the circumstances presented here, it was reasonable for the trial court to conclude that Harman was not entitled to a prescriptive easement.

### CONCLUSION

In light of our disposition of the issues set forth above, we conclude that the trial court properly quieted the property in Harman's favor inasmuch as he satisfied the requirements of adverse possession. Additionally, the trial court's award of damages to Harman was appropriate and a permanent injunction was properly issued against the Ballards. Finally, we note that the evidence presented at trial was sufficient to support the judgment that Harman was not entitled to a prescriptive easement.

Judgment affirmed.

SHARPNACK, C.J., and VAIDIK, J., concur.