Doris J. **CRAWLEY** and Donald L. Crawley, Appellant–Respondents,

v.

**OAK BEND ESTATES HOME-OWNERS ASSOCIATION, INC., et al.,** Appellees–Petitioners.

No. 32A05–0012–CV–509.

Court of Appeals of Indiana.

Aug. 14, 2001.

Rehearing Denied October 15, 2001.

Bryan Lee Ciyou, Ciyou & Dixon, P.C., Indianapolis, IN, Attorney for Appellants.

Tammy J. Meyer, Kyle A. Lansberry, Lewis & Wagner, Indianapolis, IN, Attorneys for Appellees.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

Doris and Donald Crawley appeal the trial court's entry of a preliminary and permanent injunction[1] prohibiting them

---

1. Indiana Trial Rule 65(A)(2) allows a party to seek a preliminary and a permanent injunction in the same proceeding.

from parking their recreational vehicle at their home after a complaint was filed by the Oak Bend Estates Homeowners Association, Inc. ("Oak Bend") and two Oak Bend Estates homeowners, Kim and Vaughn Towle (Oak Bend and the Towles collectively will be referred to as "Petitioners").

We affirm in part, and reverse and remand in part.

## ISSUES

1. Whether the evidence supports the findings and conclusions entered by the trial court.

2. Whether the preliminary and permanent injunctions are sufficiently specific to inform the Crawleys of the conduct prohibited.

3. Whether Petitioners' enforcement of the covenant as to recreational vehicles is barred.

4. Whether Petitioners are entitled to attorney fees.

## FACTS

In June of 2000, Oak Bend and the Towles filed their petition for a preliminary and a permanent injunction to enjoin the Crawleys "from parking a recreational vehicle ("RV") at their home in Section 5 of Oak Bend Estates in Avon, Indiana . . . ." (R. 7). The petition was based upon Section 17 of the restrictive covenants for Oak Bend. Section 17 provides:

No trucks larger than pickup trucks, disabled vehicles, unused vehicles, campers, trailers, recreational vehicles, boats, motorcycles, or similar vehicles shall be parked on any road, street, private driveway, or lot in this subdivision unless it is screened in such a way that it is not visible to the occupants of the other lots in the subdivision. No vehicle of any kind shall park on any road in this subdivision excepting for a reasonable length of time. The committee shall determine what constitutes adequate screening and reasonable length of time. (R. 74).

Attached to the petition were letters from Oak Bend's counsel requesting the Crawleys' compliance with the restrictive covenants. The letters were dated May 22, 1998 through May 2, 2000. Also attached was an affidavit by the president of the homeowner's association, Dennis Schmidt, stating that he had personally observed the RV parked in the Crawleys' driveway from May 3, 2000 through May 26, 2000.

At the injunction hearing, Schmidt detailed other dates that he had observed the Crawleys' RV parked in their driveway. Schmidt took pictures of the RV from several angles. The pictures demonstrated that the RV, which measured thirty-seven feet in length and over eleven feet in height, was easily observable by the Crawleys' neighbors.

Kim Towle testified that the RV is clearly visible from her front yard and that she has observed it parked in the Crawleys' driveway on numerous occasions "sometimes in excess of ten, twelve days." (R. 95). She noted that "they will take it away on occasion for part of the day and then it will return." (R. 96).

Don Crawley testified that he and his wife ignored the first letter from the attorney for Oak Bend because they believed that they were not violating the restrictive covenants. They then attempted to negotiate a compromise with Pat Cooney, the former Oak Bend president. According to Crawley,

we told him that we wanted to work out an agreement where we could park our motorhome there temporarily from April

through October so that we could use it on weekends, we, and on vacations, so that my wife can load it up.... Then when we talked to him we offered to cover it because that's what we had talked to Mark Eckert [the president before Cooney] about. Well we didn't get around to covering it at that time and he says well he'd have to go before the Board and ask the Board.

\*　　\*　　\*　　\*　　\*　　\*

[W]e keep it off premises in the wintertime. We keep it in a storage building up in Advance, Indiana. And then during the summer when we're not going to use it every weekend, then we usually take it off the premises at that time until we get ready....

\*　　\*　　\*　　\*　　\*　　\*

[W]e thought we had a real good agreement worked out, when we talked to him, that we'd park our motor home there from April through October, and if there was any more than fifteen days without being used, ... we would take it off and bring it back when we got ready to use it.

(R. 100–01). Crawley also stated,

That was the agreement we worked out. And that was August of Ninety-eight and he said that he would have, he would not have [Oak Bend's counsel] send us anymore letters concerning our RV as long, you know, as long as we provided, you know, followed what we'd agreed to verbally.

(R. 101). Although Crawley testified that they followed the agreement, he also stated that they did not obtain a cover for the RV. Crawley admitted that they received more letters from counsel for Oak Bend. Also, Crawley acknowledged that he believed the restrictive covenants are important to the neighborhood and thought they should be enforced "equally." (R. 130).

Cooney acknowledged a conversation with the Crawleys, but he denied reaching an agreement. Further, he stated that a cover over the RV would "absolutely not" be in compliance with the screening requirement. (R. 93).

The bulk of the Crawleys' evidence at the hearing was aimed at demonstrating that other homeowners were not in compliance with the restrictive covenants. Schmidt detailed the steps taken in the other situations in order to obtain compliance with the covenants.

The trial court granted the permanent injunction stating that the Crawleys "shall be preliminarily and permanently enjoined from having a recreational vehicle parked at their home...." (R. 47–48). A subsequent hearing was set for evidence regarding Oak Bend's and the Towles' request for attorney fees. The parties entered into a stipulation that stated, in pertinent part:

[The parties] stipulate and agree that pursuant to this Court's Order of August 14, 2000, and in lieu of a hearing on attorney fees on September 14, 2000, Petitioners are entitled to attorneys' fees incurred by Petitioners in the amount of Four Thousand Forty Dollars ($4,040.00).

The parties agree that this Stipulation does not waive the right of [the Crawleys] to appeal the Court's Order of August 14, 2000 granting a permanent injunction, or the Petitioners' right to seek reimbursement of attorneys fees incurred in any appeal which [the Crawleys] may initiate.

(R. 61).

### DECISION

1. *Evidence to Support Injunction*

■ The Crawleys contend that the evidence does not support the trial court's

findings of fact and conclusions of law; thus, the court's order granting the injunction amounts to an abuse of discretion.

We initially observe that Ind. Trial Rule 52(A) provides that "[o]n appeal of claims tried by the court without a jury ... the court on appeal shall not set aside the findings. or judgment unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." This court engages in a two-tiered standard of review when applying this standard. First, we consider whether the evidence supports the findings, construing the findings liberally in support of the judgment. Findings are clearly erroneous only when a review of the record leaves us firmly convinced that a mistake has been made. Next, we determine whether the findings support the judgment. A judgment is clearly erroneous when the findings of fact and conclusions thereon do not support it. In applying this standard, we neither reweigh the evidence nor judge the credibility of the witnesses. Rather, we consider the evidence that supports the judgment and the reasonable inferences to be drawn therefrom.

*Ballard v. Harman,* 737 N.E.2d 411, 415–16 (Ind.Ct.App.2000) (citations omitted).[2] Moreover, when findings of fact and conclusions of law are entered "the reviewing court may affirm the judgment on any legal theory supported· by the findings." *Mitchell v. Mitchell,* 695 N.E.2d 920, 923 (Ind.1998).

■■■ "A prohibitory injunction is an extraordinary equitable remedy which should be granted with caution." *Schlehuser v. City of Seymour,* 674 N.E.2d 1009, 1012 (Ind.Ct.App.1996). "The bur-

den is on the plaintiff seeking the injunction to demonstrate that certain and irreparable injury would result if the injunction were denied." *Id.* The decision whether to grant or deny an injunction lies within the trial court's sound discretion. *Burk v. Heritage Food Serv. Equip.,* 737 N.E.2d 803, 815 (Ind.Ct.App.2000). The court's decision will not be overturned unless it was arbitrary or amounted to an abuse of discretion. *Id.* "Permanent injunctions are limited to prohibiting injurious interference with rights." *Id.* Thus, "the restraint imposed by the decree should not be more extensive than is reasonably required to protect the interests of the party in whose favor it is granted." *Id.*

We have defined restrictive covenants in the following manner:

Generally, a covenant is an agreement duly made to do, or not to do, a particular act. In modern usage, the term "covenant" generally describes promises relating to real property that are created in conveyances or other instruments. Covenants may be express or implied as a matter of law. Moreover, covenants are a species of express contract.

\*   \*   \*   \*   \*   \*

If the required performance limits the uses that can be made by the owner or occupier of land, the covenant is usually called a restrictive covenant. We have held that restrictive covenants are, in essence, a form of express contract between a grantor and a grantee in which the latter agrees to refrain from using his property in a particular manner.

*Columbia Club, Inc. v. American Fletcher Realty Corp.,* 720 N.E.2d 411, 417–18 (Ind. Ct.App.1999) (citations omitted).

---

2. "When determining whether or not to grant a preliminary injunction, the trial court is required to make special findings of fact and state its conclusions thereon." *Daugherty v. Allen,* 729 N.E.2d 228, 232 (Ind.Ct.App.2000).

With regard to construction of restrictive covenants, we stated:

The covenanting parties' intent must be determined from the specific language used and from the situation of the parties when the covenant was made. Furthermore, specific words and phrases cannot be read exclusive of other contractual provisions. In addition, the parties' intentions must be determined from the contract read in its entirety. We attempt to construe contractual provisions so as to harmonize the agreement.

*Id.* at 419.

The trial court referred to Section 17 of the restrictive covenants within its findings of fact. The Crawleys argue that Section 17 is ambiguous, and that the first sentence of the section regarding RV's is incongruent with the second sentence of the section regarding parking vehicles on the road for a reasonable time. Also, they contend that the letters from Oak Bend's counsel were not consistent with regard to the interpretation of Section 17. Thus, according to the Crawleys, the varying interpretations demand a finding that the Section is ambiguous and unenforceable. We disagree.

A fair and harmonious reading of the sentences reveals that the reasonable time limitation for parking vehicles refers to vehicles other than those specifically mentioned in the first sentence. The first sentence specifically prohibits parking RV's, and certain other vehicles, on driveways, roads, streets, and lots, for any amount of time, unless the RV's and vehicles are screened. The second sentence refers to vehicles not specifically mentioned in the first sentence and proscribes parking on the roads of the subdivision "excepting for a reasonable length of time." (R. 74). In short, Section 17 prohibits the parking, for any amount of time,

of an RV in the subdivision without appropriate screening. Section 17 of the restrictive covenants is neither ambiguous nor unenforceable.

As for the inconsistency in counsel's letters to the Crawleys, it is apparent from their tone, that the Petitioners initially did not anticipate the level of resistance with which their letters of "reminder" were met. The letters admitted at trial were sent over the course of two years. They began in a conciliatory manner and later reflected Oak Bend's insistence that the Crawleys immediately comply with the restrictive covenants. The letters, as documents outside of the four corners of the restrictive covenant contract, did not create an ambiguity in the contract. *Cf. Francis v. Yates*, 700 N.E.2d 504, 506 (Ind. Ct.App.1998) (if no ambiguity in contract, court will not look beyond four corners of document to determine intent).

Our review of the evidence discloses that Don Crawley's testimony established the continuing violation of the restrictive covenants. He testified that he desired to park the RV in his driveway on a "temporary" basis from April to October of each year. He testified that he believed that by removing the RV from the property for short periods, he was in compliance with a portion of the agreement he believed he had reached with Oak Bend's former president. Finally, he acknowledged that he did not cover the RV as he had offered. Don Crawley's testimony reveals that the Crawleys did not comply with Section 17 or with the alleged agreement.

Pat Cooney denied reaching an agreement with the Crawleys. Also, he specifically stated that covering the RV would not amount to appropriate screening.

Kim Towle testified that from her front yard she had a clear view of the Crawleys' RV parked in the Crawleys' driveway.

She stated that the Crawleys occasionally removed the RV for short periods during the day.

Though Section 17 requires screening of the RV, even if the covenant allowed the RV to be parked for a reasonable period,[3] the Crawleys did not comply with the spirit or the obvious intent of the restriction. By parking an RV on their driveway for a protracted period, seven months, and occasionally driving it or moving it only to return to the driveway that day, the Crawleys engaged in a conspicuous attempt to circumvent the covenant.

The Petitioners demonstrated that the Crawleys violated the restrictive covenant agreement, and that all efforts short of the injunction had failed to produce compliance with the agreement. Further, even the Crawleys' evidence discloses that they did not comply with the covenant or with the alleged agreement.

The trial court did not err by failing to find Section 17 of the restrictive covenants ambiguous and unenforceable. By relying upon Section 17, the trial court's findings support the judgment to enforce the restrictive covenant.

2. *Sufficiently Specific Judgment*

■ The Crawleys contend that the judgment ordering that they "shall be preliminarily and permanently enjoined from having a recreational vehicle parked at their home....," (R. 47–48), is not sufficiently specific to inform them of the prohibited conduct and does not comply with the restrictive covenant. We agree.

As discussed in the first issue, Section 17 provides that no RV "shall be parked on any road, street, private driveway, or lot in this subdivision unless it is screened in such a way that it is not visible to the occupants of the other lots in the subdivi-

sion." (R. 74). By enjoining the Crawleys from permanently parking the RV at their home, it is not entirely clear whether they may be allowed to park the RV with the appropriate screening as determined by the "committee," (R. 74), or that they cannot park the RV anywhere within the subdivision without appropriate screening. In other terms, the order fails to prohibit all restricted conduct, and appears to enjoin conduct that may be allowed. As noted above, "the restraint imposed by the decree should not be more extensive than is reasonably required to protect the interests of the party in whose favor it is granted." *Burk*, 737 N.E.2d at 815. We reverse on this issue and remand with instructions to enter a judgment in accordance with this decision and reflecting the conduct proscribed by the restrictive covenants.

3. *Petitioners' Claim Barred*

■ The Crawleys complain that Oak Bend "lost the right to enforce all or part of [the] covenants because of selective enforcement, unclean hands, estoppel, waiver, laches, overreaching, and acquiescence to prior and current violations." Appellant's Brief at 21. We note that the Crawleys do not make specific arguments regarding each of the allegations. They direct us to two matters to support the above claims: 1) that letters from Oak Bend's counsel did not consistently request the same measures by the Crawleys with regard to the RV, and 2) that other violations of the restrictive covenants exist or have existed in the subdivision.

The evidence demonstrates that the president of Oak Bend at the time of the hearing, as well as two former presidents, repeatedly requested that the Crawleys comply with Section 17 of the restrictive

**3.** Schmidt testified that a reasonable period    might be seven days.

covenants. As noted above, counsel's letters to the Crawleys, over the course of two years, began in a conciliatory manner and later reflected Oak Bend's insistence that the Crawleys immediately comply with the restrictive covenants. Further, Oak Bend presented evidence as to the circumstances and actions taken to enforce the restrictive covenants with regard to the Crawleys' evidence of other violations of the covenants.

The Crawleys ask us to reweigh the evidence and accept their interpretation of the restrictive covenants. Our standard, as noted above, prohibits such review. *See Ballard,* 737 N.E.2d at 416 (we will not reweigh evidence or judge credibility of witnesses, and we consider only the evidence and reasonable inferences drawn therefrom that support the judgment). The complaint for an injunction was not barred by Oak Bend's action or inaction.

### 4. *Attorney Fees*

■ The Crawleys assert that attorney fees remain an appealable issue notwithstanding the stipulation as to the amount. The stipulation notes that the Crawleys maintain the right to appeal.

Section 34 of the restrictive covenants provides:

> If the parties hereto ... shall violate or attempt to violate any of the covenants herein, it shall be lawful for any person or persons owning any lot or lots in this subdivision to prosecute by any proceeding at law or equity the person or persons violating or attempting to violate any such covenant, and either prevent him or them from so doing or to recover damages or other dues for such violation. ... If any owner of a lot in this subdivision shall fail to maintain his lot and/or any improvements situated thereon, or to keep sight distances clear, or to construct and/or maintain sidewalks in

accordance with these restrictive covenants, the committee shall have the right, but not the obligation, by and through its agents and employees or contractors, to enter upon said lot and repair, mow, clean, or perform such other acts as may [be] reasonably necessary to make said lot, and/or any improvements situated thereon, conform to the requirements of these restrictions. The committee shall collect its cost thereof in any reasonable manner from the owner. Neither the committee nor any of its agents, employees, or contractors shall be liable for any damage that may result from any maintenance or other work performed hereunder. Any fine so assessed against any lot, together with interest and other charges or costs as hereinafter provided, shall become and remain a lien upon that lot subordinate only to the lien of a first mortgage until paid in full, and shall also be a personal obligation of the owner or owners of that lot. Such charge shall bear interest at the rate of 18% per annum until paid in full. If, in the opinion of the committee, such charge has remained due and payable for an unreasonably long period of time, the committee may institute such procedures, either at law or in equity, by foreclosure or otherwise, to collect the amount owing, in any court of competent jurisdiction. The owner of the lot or lot subject to the charge shall, in addition to the amount of the charge due at the time legal action is instituted, be obligated to pay any expenses or costs, including attorney's fees, incurred by the committee in collecting the same. Every owner of a lot in this subdivision, and any person who may acquire any interest in such lot, whether as an owner or otherwise, is hereby notified, and by acquisition of such interest of such interest agrees, that any such liens which may exist upon said lot at the time of the

acquisition of such interest are valid liens and shall be paid. Every person who shall become an owner of a lot in this subdivision is hereby notified that by the act of acquiring, making such purchase, or acquiring such title, such person shall be conclusively held to have covenanted to pay the committee all fines that shall be made pursuant to this paragraph.

(R. 74). The Crawleys contend that Petitioners are not entitled to attorney fees under Section 34 unless the Crawleys were fined and refused to pay the fine for an unreasonable amount of time. Thus, according to the Crawleys, because they were not fined, the Petitioners cannot seek attorney fees. We disagree.

As noted above, when construing the parties' intent in restrictive covenants we read the contract in its entirety and attempt to construe contractual provisions in a manner so as to harmonize the provisions. *See Columbia Club, Inc.,* 720 N.E.2d at 419.

Section 34 purports to allow the imposition of fines for violations of the restrictive covenants. The right to seek attorney fees is specified in the following sentence: "[t]he owner of the lot or lot subject to the charge shall, in addition to the amount of the charge due at the time legal action is instituted, be obligated to pay any expenses or costs, including attorney's fees, incurred by the committee in collecting the same." (R. 74). However, with regard to violations of the covenants, Section 34 provides: "it shall be lawful for any person or persons owning any lot ... in this subdivision to prosecute by any proceeding at law or equity the person or persons violating ... such covenant, and either prevent him or them from so doing or to recover dam-

ages or other dues for such violation." (R. 74). Although not artfully drafted, Section 34 allows the recovery of attorney fees when a violation of the covenants occurs because the violators are subject to the charges even when "fines" or "dues" are not assessed. (R. 74).

Accordingly, we hold that the restrictive covenants allow the petitioners to recover attorney fees they incurred as a result of enforcing these covenants.[4] *See Depeyster v. Town of Santa Claus,* 729 N.E.2d 183, 190 (Ind.Ct.App.2000) (allowing attorney fees because specifically provided for in restrictive covenants and requested by prevailing party).

Affirmed in part, and reversed and remanded in part.

MATHIAS, J., and VAIDIK, J., concur.

---

4. The Crawleys do not question the stipulated amount of the attorney fees if the fees are expressly allowed by the covenants.