**WEDGEWOOD COMMUNITY ASSOCIATION, INC.,**
Appellant–Plaintiff,

v.

**Robert O. NASH and Barbara Nash,**
Appellee–Defendants.

No. 02A03–0204–CV–112.

Court of Appeals of Indiana.

Jan. 21, 2003.

Michael H. Michmerhuizen, Patrick G. Murphy, Barrett & McNagny LLP, Fort Wayne, IN, Attorneys for Appellant.

David Van Gilder, Van Gilder & Trzynka, PC, Fort Wayne, IN, Attorney for Appellees.

## OPINION

MATHIAS, Judge.

Wedgewood Community Association, Inc. ("Wedgewood Association") appeals the Allen Superior Court's determination that despite a restrictive covenant violation by Robert O. Nash ("Nash"), he was not required to remove a shed constructed in his yard. Wedgewood raises two issues on appeal, which we restate as:

I. Whether the trial court clearly erred when it determined that Wedgewood's claim for declaratory and injunctive relief in law and equity against Nash was defeated by the doctrine of unclean hands; and,

II. Whether the trial court abused its discretion when it denied Wedgewood's request for attorney fees.

We reverse.

### Facts and Procedural History

The facts most favorable to the trial court's determination reveal that throughout this proceeding, Nash resided at 7204

Bay Head Cove, Fort Wayne, Indiana. His residence is one of 161 lots in Wedgewood Place subdivision. Wedgewood Association is a not-for-profit Indiana corporation that governs the homeowners' association of Wedgewood Place subdivision.

The residents in Wedgewood Place are bound by the "Dedications, Protective Restrictions, Covenants, Limitations, Easements and Approvals, Appended to and Made a Part of the Dedication and Plat of Wedgewood Place Subdivision Section I a subdivision in St. Joseph Township, Allen County, Indiana" ("the Restrictive Covenants"), which has been amended several times since it was originally recorded in 1987. Appellant's App. p. 46–59. In 1997, Nash received a copy of the Restrictive Covenants as an attachment to his Deed.

In pertinent part, the covenants provide:

ARTICLE VI
*ARCHITECTURAL CONTROL*

No building, fence, wall, or other structure shall be commenced, erected, or maintained upon any lot, nor shall any exterior addition to or change or alteration therein be made until the plans and specifications showing the nature, kind, shape, height, materials, and location of the same shall have been submitted to and approved in writing as to harmony of external design and location in relation to surrounding structures and topography by the Board of Directors of the Association, or by the Architectural Control Committee to be composed of three members, the first Committee members to be:.... A majority of the Committee may designate a representative to act for it. In the event of death or resignation of any member of the Committee, the remaining members shall have full authority to designate a successor. In the event said Board, or the Architectural Control Committee, fails to approve or disapprove such design and location within thirty (30) days after said plans and specifications have been submitted to it, this article will be deemed to have been fully complied with.

ARTICLE VII
*GENERAL PROVISIONS*

*Section 1.* No lot shall be used except for residential building purposes. No building shall be erected, altered, placed or permitted to remain on any lot other than one detached single-family dwelling not to exceed two and one-half stories in height. Each house shall include not less than a two-car garage, which shall be built as part of said structure and attached thereto.

. . . .

*Section 7(a).* No structure of a temporary character, no trailer, boat trailer, camper or camping trailer, no basement, tent, shack, unattached garage, barn or other outbuilding, shall be constructed, erected, located or used on any lot for any purpose, including use as a residence, either temporarily or permanently; provided, however, that basements may be constructed in connection with the construction and use of a residential building.

. . . .

*Section 20.* The Association, The North Eastern Construction Co., Inc., or any owner shall have the right to enforce, by any proceeding at law or in equity, all restrictions, conditions, covenants, reservations, liens and charges now or hereafter imposed by the provisions of these covenants and restrictions. Failure by the Association or by any owner to enforce any covenant or restriction herein contained shall in no event be deemed a waiver of the right to do so thereafter.

. . . .

*Section 26, Attorney's Fees and Related Expenses.* In the event the Association or North Eastern Construction Co., Inc., shall be successful in any proceeding, whether at law or in equity, brought to enforce any restriction, covenant, limitation, easement, condition, reservation, lien or charge now or hereinafter imposed by the provisions of the Dedication, Protective Restrictions, Covenants, Limitations, Easements and Approvals Appended to and made a part of the Dedication and Plat of Wedgewood Place, Section I, such party shall be entitled to recover from the party against whom the proceeding was brought all of the attorney's fees and related costs and expenses incurred in such proceeding.

Ex. Vol. I, Ex. F.

In 1997, Wedgewood Association conducted a survey among the residents, asking each resident whether he or she was in favor of amending the Restrictive Covenants to allow outbuildings subject to certain construction standards. The survey provided that if more than seventy-five percent of the residents agreed to amend the Restrictive Covenants, the Association's attorney would begin drafting an amendment. Less than seventy-five percent of the residents voted in favor of the proposed outbuilding amendment. Tr. p. 28.

In February of 2000, Nash erected an eight-foot by ten-foot garden shed in his backyard, without first submitting written plans to the Architectural Committee or receiving written approval from the Wedgewood Board of Directors or the Architectural Control Committee, all required steps pursuant to Article VI of the Wedgewood Place Restrictive Covenants. Wedgewood's Board President Steve McMichael ("McMichael") was immediately notified of the shed by a resident.

Within one day of the erection of the shed, McMichael and Architectural Control Committee Chairperson Michael Tucker ("Tucker") went to the Nash residence to discuss the shed. They knocked at the Nash residence door, but there was no answer. Later that same day, Tucker again went to the Nash residence, and knocked at the door. Again, there was no answer. Attorney Robert E. Doelling, Jr. then sent Nash a letter notifying Nash that he was in violation of a restrictive covenant. Nash contacted McMichael and arranged a meeting for February 26, 2000, at the Nash residence.

At the meeting, McMichael and Nash reached an informal agreement whereby McMichael agreed to delay any action against Nash for forty-five days, and Nash would send a written response to the agreement by February 28, 2000. The response was to provide that if Nash could not obtain support of more than seventy-five percent of the neighborhood residents in favor of amending the Restrictive Covenants to allow such structures, then Nash would remove his shed by May 1, 2000. Nash failed to send any such written correspondence to McMichael. Additionally, while the Nash family began the survey, they did not complete it, and the final results were never tallied and distributed. Thereafter, Nash did not remove the shed from his yard, and never reached any subsequent agreement with Wedgewood Association.

On March 31, 2000, Wedgewood Association filed a complaint against Nash for violating the Restrictive Covenants. Wedgewood Association requested "declaratory and injunctive relief in law and equity for breach of the Restrictive Covenants including but not limited to an Order requiring [Nash] to remove from the Premises said Shed and for judgment against [Nash], . . ., for court costs, attorney fees,

and for all other relief as is just and proper in the premises." Appellee's App. p. 3. After briefing was complete, the trial court conducted a bench trial on January 23, 2002, and February 1, 2002. Pursuant to court order, the parties submitted Proposed Findings of Fact and Conclusions of Law on February 15, 2002. On March 26, 2002, the trial court entered its Order of Judgment, including Findings of Fact and Conclusions of Law.

With regard to the doctrine of unclean hands, the trial court made the following pertinent findings and conclusions:

### FINDINGS OF FACT

. . . .

17. Prior to this litigation, and extending through the date of trial, current Wedgewood board member Dave Koenig ("Koenig") has had located on his property in the backyard an unattached structure used in conjunction with an outdoor child's play set.

18. According to Koenig, the structure has sides, a door and a shingled roof. The structure, although located on stilts, is not attached to his residence and is a building. This playhouse is located at 6426 Postbrook Lane and is located within Wedgewood.

19. An unattached child's play structure with a roof and sides is also located at 7217 Woodmeadows Lane, which home is located within the boundaries of Wedgewood.

20. In Koenig's opinion, the structure located on his property does not violate the restrictive covenants because it is a child's play structure, and has the sole purpose for children's playing. However, upon questioning by the Court, Koenig agrees that if the same structure were removed from its stilts, placed on the ground and used to store garden tools, the structure could be in violation of the restrictive covenants.

21. Nash's remaining allegations of other covenant violations deal with trailers, boats, campers, satellite dishes, aerials and trucks.

. . . .

### CONCLUSIONS

Any finding of fact shall also be deemed a conclusion.

. . . .

There are, however, personal defenses available to Nash to an action in equity seeking to enforce restrictive covenants. These are estopple [sic], acquiescence and clean hands.

. . . .

The structures located at 6426 Postbrook Lane and 7217 Woodmeadows Lane are unattached outbuildings. Wedgewood attempted to distinguish these structures on the basis that they had three sides, that they were children's play structures, or that they were not "enclosed[.]" Nothing in the Restrictive Covenants defines an outbuilding as being a structure that is fully enclosed. Neither do the covenants differentiate and permit outbuildings on their use, that is storage versus child's play.

Webster's Collegiate Dictionary, 10th Edition defines *structure* as "something that is constructed,"[ ] a *building* as a "roofed and walled structure[,]" [ ] an *outbuilding* as "a building separate from, but accessory to a main house[,]"[ ] and a *shack* as an "enclosed structure for a particular use."

Any of these definitions fit both the Nash's [sic] shed and the children's play houses currently located in Wedgewood.

Both, then, are in violation of the Restrictive Covenants of Wedgewood. The structure located at 6426 Postbrook Lane is located on board member Koenig's property. This violation existed both prior to, and at the time of the trial of this matter.

The doctrine of unclean hands is an equitable tenet[,] which demands one who seeks equitable relief to be free from wrongdoing in the matter before the Court. *Stewart v. Jackson,* 635 N.E.2d 186, 189 (Ind.Ct.App.1994). Although Indiana recognizes the ability to purge oneself of wrongdoing, which effectively restores the right to equitable relief, Wedgewood had not purged itself of the wrongdoing as of [the] date of trial. *Id.* at 190.

As a result, Wedgewood's claim is defeated on the basis of unclean hands.

Wedgewood is precluded from seeking equitable relief because of its own violation of Article VI Section 7(a), specifically, the outbuildings located at 6426 Postbrook Lane and 7217 Woodmeadows Lane.

. . . .

### ORDER

. . . .

As to the Complaint originally filed by Wedgewood Community Association, Inc. against Barbara Nash, the Court dismisses Barbara Nash from that claim.

As to Robert O. Nash, the Court DENIES Wedgewood Community Association, Inc.'s Petition for Injunctive Relief.

Appellant's App. pp. 13–24. With regard to attorney fees, the following findings and conclusions are applicable:

### FINDINGS OF FACT

. . . .

44. Wedgewood has incurred $28,616.74 in attorney's fees and expenses in the prosecution of its claim against Robert and Barbara Nash. . . .

. . . .

### CONCLUSIONS

. . . .

Any finding of fact shall also be deemed a conclusion.

. . . .

### ORDER

. . . .

Both parties['] requests for attorneys' fees are DENIED.

. . . .

Appellant's App. pp. 13–24. Wedgewood Association now appeals. Additional facts will be provided as necessary.

### Standard of Review

Wedgewood Association's suit requested declaratory and injunctive relief in law and equity. The trial court entered specific findings of facts and conclusions of law. Pursuant to Indiana Trial Rule 52, our court will not set aside a trial court's findings or judgment unless clearly erroneous. Additionally, we must pay heed to the trial court's ability to judge the credibility of the witnesses. We utilize a two-tier standard of review in this situation. *Crawley v. Oak Bend Estates Homeowners Assoc.,* 753 N.E.2d 740, 744 (Ind.Ct.App. 2001), *trans. denied.*

First, we consider whether the evidence supports the findings, construing the findings liberally in support of the judgment. Findings are clearly erroneous only when a review of the record leaves us firmly convinced that a mistake has been made. Next, we determine whether the findings support the judgment. A judgment is clearly erroneous when the findings of fact and conclusions thereon do not support it. In applying

this standard, we neither reweigh the evidence nor judge the credibility of the witnesses. Rather, we consider the evidence that supports the judgment and the reasonable inferences to be drawn therefrom.

*Id.* (quoting *Ballard v. Harman,* 737 N.E.2d 411, 415–16 (Ind.Ct.App.2000) (citation omitted)).

## I. Unclean Hands

 Wedgewood Association argues that the trial court was clearly erroneous when it determined that even though Nash was in clear violation of the restrictive covenant prohibiting outbuildings, Wedgewood Association was not entitled to relief based upon their own unclean hands. The principle of unclean hands is that "he who comes into equity must come with clean hands." *Keller v. Ind. Dept. of State Revenue,* 530 N.E.2d 787, 788 (Ind. Tax Ct.1988), *appeal dismissed,* 549 N.E.2d 372 (Ind.1990) (citing *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.,* 324 U.S. 806, 65 S.Ct. 993, 89 L.Ed. 1381 (1945); *Roberts v. Vonnegut,* 58 Ind.App. 142, 104 N.E. 321 (1914)). The doctrine of unclean hands is not favored and must be applied with reluctance and scrutiny. *Shriner v. Sheehan,* 773 N.E.2d 833, 847–48 (Ind.Ct.App.2002) (citation omitted). For the doctrine of unclean hands to apply, the misconduct must be intentional, *id.* (citation omitted), and the wrong that is ordinarily invoked to defeat a claimant by using the unclean hands doctrine must have an " 'immediate and necessary relation' to the matter before the court." *Keller,* 530 N.E.2d at 788 (quoting *Keystone*

*Driller Co. v. Gen. Excavator Co.,* 290 U.S. 240, 54 S.Ct. 146, 78 L.Ed. 293 (1933); *Powell v. Mobile Cab & Baggage Co.,* 263 Ala. 476, 83 So.2d 191 (1955)).[1]

Nash argues that Wedgewood Association had unclean hands because one of its Board members, Koenig, was also violating the restrictive covenant prohibiting outbuildings and shacks that Nash himself was violating. Nash argues that "[i]t is clearly inequitable for Wedgewood to bring a suit based on Nash's alleged violation of a restrictive covenant when Wedgewood's board member is in violation." Br. of Appellee at 10.[2] Nash also complains that Wedgewood Association has not actively sought out covenant violations.

Nash relies heavily on *Stewart v. Jackson,* 635 N.E.2d 186 (Ind.Ct.App.1994). *Stewart* involved next-door neighbors, wherein one was trying to enforce a restrictive covenant against the other. The Jacksons were operating a home daycare out of their residence, contrary to the restrictive covenants governing the neighborhood. The Stewarts brought the suit requesting injunctive relief prohibiting the Jacksons from operating the daycare. At trial, the Jacksons presented evidence that several other people in the neighborhood were violating the restrictive covenants. They presented evidence of instances where neighbors worked from their homes: four other daycare homes, a salesman that worked from his home, a woman who taught piano lessons in her home, a woman that sold crafts from her home, and a man who ran a computer consulting business from his home. *Id.* at 188. The Jacksons

---

**1.** "The maxim in question is said not to affect all 'sinners' or to embrace general iniquitous conduct, and not to comprehend all moral infirmities, the reason being that courts of equity are not primarily engaged in the moral reformation of the individual citizen." *Keller,* 530 N.E.2d at 789 (quoting 27 Am.Jur.2d Equity § 138 (1974)).

**2.** Even though the structure at issue in this case is a shed on Nash's property, and the only parties to the case are Wedgewood Association and Nash, the trial court concluded that Koenig and the other property owner with a child's playhouse were violating the restrictive covenant prohibiting outbuildings. Appellant's App. p. 23.

also presented evidence that the Stewarts themselves had operated as a toy manufacturer and wholesaler from their home, and that Mr. Stewart operated his contracting construction company from his home. *Id.*

A panel of this court concluded that the unclean hands doctrine was one of the theories used by the trial court when it denied the Stewarts' request for injunctive relief. *Id.* at 189. Our court concluded that Indiana recognizes the ability of a party to purge itself of wrongdoing, which restores that party's right to seek equitable relief. *Id.* at 189 (citing *Keller*, 530 N.E.2d at 790). Our court then concluded that because the Stewarts were no longer operating businesses from their home, they had purged themselves of unclean hands, and therefore, their claim against the Jacksons could not be defeated based upon the unclean hands doctrine. *Id.* Additionally, in a footnote, this court found that even though there was evidence that the Stewarts were in violation of other restrictive covenants for fence heights and commercial vehicle parking, such violations did not support an unclean hands finding because the violations were merely incidental to the issues in the case. *Id.* at 190 n. 1 (citing *Keller*, 530 N.E.2d at 788).

We conclude that the *Stewart* case is dissimilar to ours. One very important difference between *Stewart* and our case is that in our case, the plaintiff is Wedgewood Association, not an actual resident of the neighborhood. It was very important to the *Stewart* case decision, and the application and applicability of the unclean hands doctrine, that one neighbor was complaining of another neighbor's covenant violation while at the same time, the complaining neighbor also might have been violating the same covenant.

■ In our case, however, Wedgewood Association is not and cannot possibly be violating the same restrictive covenant as Nash because Wedgewood Association is not a resident of the neighborhood. Additionally, although Nash complains of the actions of one of the board members, such conduct does not convert Wedgewood Association into a fellow resident. Alleged selective enforcement of restrictive covenants is clearly not a violation of the restrictive covenant forbidding outbuildings and may be remedied by the ballot box of the association officer elections. Therefore, the unclean hands doctrine is not applicable to this case, and the trial court's decision was clearly erroneous. Based upon the trial court's conclusion that Nash's outbuilding was in violation of the restrictive covenant prohibiting such outbuildings, and our conclusion that the doctrine of unclean hands (the only basis for the trial court's decision) is not applicable to the facts of this case, we conclude that Wedgewood Association's injunction should have been granted.[3]

## II. Attorney Fees

■ Wedgewood Association next argues that the trial court abused its discretion when it failed to award it attorney fees and related costs and expenses pursuant to Article VII, Section 26 of the Restrictive Covenants.[4] Amended Article VII, Section 26 of the Restrictive Covenants provides:

3. Because the unclean hands doctrine is not applicable to this case, we need not address whether Wedgewood Association's conduct was intentional and directly related to their enforcement of the covenant against Nash.

4. Because we conclude that the trial court was clearly erroneous when it determined that unclean hands prevented Wedgewood Association from enforcing the restrictive covenant prohibiting outbuildings against Nash, Wedgewood's argument that it should have been awarded attorney fees despite that determination is moot.

*Section 26, Attorney's Fees and Related Expenses.* In the event the Association or North Eastern Construction Co., Inc., shall be successful in any proceeding, whether at law or in equity, brought to enforce any restriction, covenant, limitation, easement, condition, reservation, lien or charge now or hereinafter imposed by the provisions of the Dedication, Protective Restrictions, Covenants, Limitations, Easements and Approvals Appended to and made a part of the Dedication and Plat of Wedgewood Place, Section I, such party shall be entitled to recover from the party against whom the proceeding was brought all of the attorney's fees and related costs and expenses incurred in such proceeding.

Appellant's App. p. 56. Based upon this Restrictive Covenant and the fact that we conclude in Part I of this opinion that Wedgewood Association may enforce its restrictive covenant prohibiting outbuildings against Nash, we conclude that Wedgewood Association is entitled to trial court attorney fees and related costs and expenses.

Nash argues that regardless of the validity of the covenants, the trial court never determined that Nash was violating the restrictive covenants. We disagree. After defining the words structure, building, outbuilding and shack, the trial court provided: "Any of these definitions fit *both* the Nash's [sic] shed and the children's play houses currently located in Wedgewood." Appellant's App. p. 11 (emphasis added). In the next paragraph of conclusions, the trial court found: "*Both*, then are in violation of the Restrictive Covenants of Wedgewood. The structure located at 6426 Postbrook Lane is located on board member Koenig's property. The violation existed both prior to, and at the time of the trial of this matter." *Id.* (emphasis added). The trial court's use of the word "both" in the first cited paragraph refers to Nash's shed and the children's playhouses referred to throughout the case. The use of the word "both" in the second cited paragraph again refers to Nash's shed and the children's playhouses. The trial court clearly determined that Nash was in violation of the restrictive covenant prohibiting outbuildings.

The trial court found that Wedgewood incurred $28,616.74 in attorney's fees and expenses in the prosecution of its claim against Nash. Appellant's App. p. 21. Therefore, as stated above, we conclude that pursuant to Amended Article VII, Section 26, Wedgewood is entitled to attorney fees and related costs and expenses from Nash.

### Conclusion

Because the trial court based its decision upon the erroneous application of the unclean hands doctrine to the facts of this case, we reverse the trial court's determination that regardless of Nash's restrictive covenant violation, his shed could remain on his property, and conclude that Nash must remove his shed. We further conclude that based upon Amended Article VII, Section 26 of the Restrictive Covenants, and our decision that the unclean hands doctrine does not apply to this case, Wedgewood is entitled to recover its attorney fees and related costs and expenses.

Reversed.

BAILEY, J., concurs.

SULLIVAN, J., concurs with separate opinion.

SULLIVAN, Judge, concurring.

The result which we reach today does not seem quite equitable or fair. It does, however, comport with the law as it currently exists.

The conduct of Wedgewood, through McMichael and others, is not conduct

which is prohibited by the Indiana doctrine of "unclean hands." "Unclean hands" was the basis upon which the trial court made its determination. That doctrine does not equate with "acquiescence" or even a concept of "fair dealing" between a homeowner's association (made up of the collective residents as governed by a Board of Directors) and a particular resident.

Furthermore, although to assess Nash with attorney fees of $28,000 may seem disproportionate to the gravity of the matter in litigation, the controlling documents permit such award.

Accordingly, I concur albeit somewhat reluctantly.