# FOR PUBLICATION



ATTORNEY FOR APPELLANTS:

**MICHAEL O. ELLIS**
Bloomington, Indiana

ATTORNEY FOR APPELLEE:

**MICHAEL L. CARMIN**
Andrews, Harrell, Mann, Carmin &
 Parker, P.C.
Bloomington, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

|  |  |  |
|---|---|---|
| EARL F. SHIELDS, LARRY J. SHIELDS, and ROBERT L. SHIELDS, | ) ) ) | |
| Appellants, | ) ) | |
| vs. | ) ) | No. 53A04-1202-PL-95 |
| RODNEY L. TAYLOR, | ) ) | |
| Appellee. | ) ) | |

APPEAL FROM THE MONROE CIRCUIT COURT
The Honorable Douglas R. Bridges, Senior Judge
Cause No. 53C06-1104-PL-589

**October 17, 2012**

**OPINION - FOR PUBLICATION**

**BROWN, Judge**

Earl Shields, Larry Joe Shields, and Robert Shields (collectively, the "Shields") appeal the trial court's Findings of Fact, Conclusions of Law and Order, and subsequent denial of the Shields' motion to correct errors, in favor of Rodney Taylor. The Shields raise one issue which we revise and restate as whether the court erred in concluding that their counterclaim was not sufficiently pled to encompass a theory of easement by prescription. We affirm.

FACTS

The relevant facts follow. The Shields and Taylor are owners of adjacent parcels of land in Monroe County, in which Taylor's parcel is situated to the north of the Shields parcel. Taylor's property is bordered on the north side by Earl Young Road. Taylor purchased his property approximately fifteen years ago from John and Phyllis Chuke, who had previously purchased the property from Frank Hudoff. The Shields have owned their property for three generations. The Shields' property is divided into two parts by a steep hill, and they have driven across Taylor's property on a dirt road accessed from Earl Young Road in order to reach the back portion, which they called "the long bottom," for the last forty or fifty years. Transcript at 166. In the time that Taylor had owned his property, the Shields had not spoken with Taylor about their using it to access the long bottom and felt they had no reason to do so.

In September 2010, a dispute arose between the Shields and Taylor regarding the Shields' use of the dirt road on Taylor's land to access the long bottom. Specifically, the Shields contracted to have logging performed on their property, and the logging company cut a logging trail through Taylor's property to access the Shields' property, including

2

through creek banks. After Taylor told the Shields they could not use his property for their logging activities, the Shields attempted to access the long bottom through another neighbor's property owned by Barrow, whose property was to the west of Taylor's, and Taylor told the Shields that the route they were using still passed upon part of his property and pointed to a marker to show the border of his property.

COURSE OF PROCEEDINGS

On April 4, 2011, Taylor filed a complaint alleging trespass and requesting a restraining order, and on that same day filed a verified petition for temporary restraining order to stop the Shields from entering his property. On May 9, 2011, the court held a hearing on the petition for temporary restraining order, and on May 17, 2011, the court issued a temporary restraining order enjoining the Shields from entry onto Taylor's property. On September 2, 2011, the Shields filed an answer and counterclaim in which their counterclaim asserted as follows:

Defendants, for their counterclaim against plaintiff, state as follows:

1. The Taylor real estate is adjacent to the Shields real estate along the north boundary line of Shields' property and the south boundary line of Taylor's property.

2. The northernmost 20 acres of the Shields' property is accessible only from the northern side of the property because the Shields property is divided by a high, very steep hill, such 20 acres hereinafter referred to as "the Back Twenty Acres."

3. From the late 1950's and for approximately 50 years thereafter, the Shields family has had continuous, uninterrupted access to their Back Twenty Acres by an easement granted by Frank Hudoff – the former owner of the Taylor property – then by John and Phyllis Chute [sic] – the subsequent owners of the Taylor property – and then, most recently, by plaintiff's own consent or acquiescence.

3

3. [sic] All of the owners of the Taylor real estate since the late 1950's have agreed with Shields' right to use the easement across the Taylor real estate (Taylor's driveway) to access the Back Twenty Acres, and all the neighbors for the past 50 years have known of this. There has never been a question or controversy about such use until the Shields timbered some of their land in August 2010.

4. Even Taylor himself did not contest defendants' use of the right of way until Taylor saw them cutting timber and taking it out across the easement. At that time, Taylor demanded exorbitant fees from the timbering for use of the easement, which the Shields refused to pay.

5. At such time, Taylor blocked the access to Shields' Back Twenty Acres and the Shields gained permission from the neighbor Barrow to cross *his* land and then the creek to access the Back Twenty Acres.

6. At this time Taylor began to claim that he owned the creek too, so that any crossing into the Back Twenty Acres would be, he claimed, a trespass and he threatened to prosecute the Shields if they tried to gain such access even across Barrow's land.

7. By such means – and for the first time in 50 years – the Shields were unable to harvest and plant the Back Twenty Acres with hay to feed the Shields' cattle.

8. Due to Taylor's actions without legal justification, the Shields lost a season's worth of hay for their cattle, at a cost to them of approximately $300.

9. Taylor is liable to the defendants for $300 for last year's hay, together with the costs of this year's hay if Taylor continues to prevent the Shields from planting for the new season.

WHEREFORE, defendants pray the Court find in their favor and against plaintiff in the amount of $300, together with any new damages relating to the planting of this year's hay season.

Appellants' Appendix at 6-7. On October 24, 2011, in advance of trial, Taylor filed a trial memorandum detailing "the applicability of the doctrines of license and easement" and specifically discussed express, written easements. Appellee's Appendix at 18. The Shields did not file a trial memorandum.

4

On October 28, 2011, the court held a bench trial in which, at the conclusion of the Shields' opening statement, their counsel noted that it would ask the court to "declare that the Shields do in fact have an easement across Taylor's property to access the long bottom . . . ." Transcript at 7-8. At trial, Taylor testified that the Shields "occasionally" asked if they could cross his property, which he later indicated was "every couple months." Id. at 10, 12. Taylor testified that he posted no trespassing signs on the borders of his property as soon as he purchased it. Id. at 11. Taylor testified that Mary Hampton, who is the Shields' sister and who also is an owner of the Shields' parcel, indicated to him that "she had an easement," that "it was recorded," and that she would retrieve a copy for Taylor, but she never produced a copy of a written easement. Id. at 23. When asked about whether Taylor knew if the Shields had historically used his parcel to access the long bottom, Taylor testified that "back before [he] bought it [] no one lived there. It was just, they probably took advantage of it, and they probably run in and out of there at, at will," but that "after I bought it, it just didn't happen. And I went down and I checked all the records to know, nothing saying that they can. There's no easement." Id. at 52.

Earl Shields, who was sixty-one years old, testified that at least since he was a child of five or six, his family accessed the long bottom by a dirt road which was accessible by Earl Young Road and currently runs across Taylor's property. Earl testified that he, his father, and his grandfather all farmed the long bottom, that he uses a tractor to farm it, that he farms it "[j]ust about every year," and that in order to use the tractor he approaches the long bottom from the dirt road running across Taylor's property. Id. at

5

171. Earl testified that he stopped using the route across Taylor's land in the summer of 2010 when Taylor told him to stop.

On cross-examination, Earl testified that the route he has used to approach the long bottom was "a logging road to start" but that it currently is used by Taylor as a driveway. Id. at 173. Earl testified that he has never asked permission of Taylor to use the dirt road to approach the long bottom and he did not have knowledge of either of his brothers doing the same. Earl testified that the prior owners of Taylor's property, beginning with the Hudoffs, gave their consent to use their property to approach the long bottom, and he indicated that Taylor "consented to and approved . . . coming through there until the summer Two Thousand Ten when he . . . told [the Shields] to stop." Id. at 176. On redirect, Earl indicated that he did not understand the language contained in Paragraph 3 of the counterclaim, and he reiterated that he had never had a conversation with Taylor about crossing Taylor's property and that he would "just go across" if he wanted to. Id. at 184. Earl indicated that "because [his] family has used that pathway for a long time" he "felt like [he] didn't have to ask for permission." Id. at 185.

Larry Joe Shields testified similarly to Earl, noting that they have always traversed Taylor's property to approach the long bottom and have farmed it yearly. When asked whether he had ever asked the Chukes for permission to use the dirt road, Taylor objected, the court responded "[y]ou may answer," and Larry Joe stated that he had not because "we always went, went through there." Id. at 191. Larry Joe also testified that he had never asked Taylor for permission to cross. He also testified that he had never seen a no trespassing sign on Taylor's property. Also, Michael Sheppard, a surveyor

6

hired by the Shields, testified that he had walked the border of the Shields' and Taylor's property three times and did not recall seeing any posted no trespassing signs.

Taylor called Robert Shields to the stand, and Robert testified that he had never spoken with Taylor. Taylor also called Mary Hampton who testified that she never told Taylor or the court at a previous hearing that she had a written easement. Afterward, Taylor was recalled to the stand and testified that he had spoken with Robert Shields about restoring creek banks, that Hampton had told him she had a written easement but never provided one, and that he believed Larry Joe had visited his house and asked if he could use the dirt road to access the long bottom.

Also, during the Shields' examination of Larry Joe Shields, Taylor's counsel objected to the line of questioning, arguing that "[w]e're here to defend a claim that was filed that says contrary to what they're now saying. . . . The case we're here to try is their claim of consensual easement, not what is now trying to build a case for adverse, restrictive [sic] easement or something else." Id. at 191-192. The Shields' counsel responded that "[t]he counterclaim says consent or acquiescence. It had to be written that way because I didn't know whether we had a recorded easement," and that "Larry believed that there was a recorded easement. We've not found a recorded one, but they've always maintained they've had an easement or a right to use that." Id. at 192. The following then occurred:

> [Taylor's Counsel]: So what? We're supposed to come in here and draw all the pleadings and, and anything goes today? This, we're here to defend a specific claim, and this is not it that we're here today, and I object to this. We are not here. . .

THE COURT:     . . . sustained . . .

[Shields' Counsel]:    Counsel objects to the word consent. The counterclaim also says acquiescence. You just didn't read the word.

[Taylor's Counsel]:    Only as to [Taylor], not as to anybody else. It's your pleading.

[Shields' Counsel]:    I believe my question was did he ever ask permission from Mister Taylor. Is that, I, I'm not sure exactly what [Taylor's Counsel] is objecting to . . .

[Taylor's Counsel]:    . . . . objection, relevance. I thought it was sustained.

THE COURT:     Go ahead.

[Shields' Counsel]:    Okay. Well I'll ask it and see what happens. Did you ever ask Mister Taylor for permission to . . .

[Larry Joe]:     . . . no . . .

[Taylor's Counsel]:    . . . objection, relevance.

[Shields' Counsel]:    And you cut across his property through all the years that he owned it until September, Two Thousand Ten?

[Larry Joe]:     Yeah.

Id. at 192-193 (ellipses in original).

On November 14, 2011, the parties tendered proposed findings and conclusions, and on December 9, 2011, the court entered its Findings of Fact, Conclusions of Law and Order (the "December 9 Order"), containing the following:

**FINDINGS OF FACT**

\* \* \* \* \*

35.    [The Shields] asserted that they have a written easement contained in a deed giving them a right of access across [Taylor's] property. [The Shields] failed to produce any written easement in the form of a deed

8

or any other written document to substantiate a claimed right of an easement through the Taylor Real Estate.

36.     [The Shields], in their Counterclaim, allege a right of access through the Taylor Real Estate by oral consent to such access by [Taylor] and [Taylor's] predecessors in title.  [The Shields'] counterclaim alleges only consensual entry or a consensual right of access to the Taylor Real Estate given by [Taylor] and [Taylor's] predecessors in interest.  [The Shields'] trial testimony suggested possible theories of access to the Taylor Real Estate including by way of necessity and prescriptive easement.  The pleadings do not support such additional theories of rights of access to the Taylor Real Estate.  The evidence does not support the elements of right of way by necessity.  The Shields Real Estate touches upon a public road and is not in any manner landlocked.  [The Shields'] allegations and evidence indicated that entry onto the Taylor Real Estate was consensual and not prescriptive as would be required to establish a prescriptive easement.

## CONCLUSIONS OF LAW

1.     An express easement can only be created through the execution of a written document. . . .  Only a revocable license can be orally created. . . .

2.     Express easements must be in writing. . . .

3.     [The Shields'] claim of easement requires that the easement be set forth in a written instrument.  The easement cannot be created by oral agreement.  An oral agreement concerning the use or interest in real estate is a license.

4.     A license may be rescinded at any time. . . .

5.     In the Shields' Counterclaim, they assert that their use of the Taylor Real Estate was through the consent and acquiescence of the Taylors until 2010.  According to Webster's Dictionary, to "acquiesce" is to "agree or consent quietly," and to "consent" is "to give permission, approval, or agree."  By asserting that the Taylors consented to the Shields' use of the Taylor Real Estate until 2010, the Shields acknowledge the permissive nature of their past access to the Taylor Real Estate.  [The Shields'] allegations of consent by Taylor constitute an allegation that Taylor granted a license to [the Shields] for use or entry onto the Taylor Real Estate.  [The Shields] further allege that at some point [Taylor] objected to [the Shields] entry onto the Taylor Real Estate.  Such allegation is an admission that any oral license had been rescinded.

9

6.    . . . . [The Shields] do not have a legal basis for continued entry onto the Taylor Real Estate.

* * * * *

9.    [The Shields] have no right of access through the Taylor Real Estate absent [Taylor's] consent.

Appellants' Appendix at 9, 17-19. The court ordered that the property line between Taylor's and the Shields' parcel be set "in accordance with the land survey of Erick Deckard" and that the Shields pay Taylor $4,150 with costs due to damage caused by the Shields to Taylor's property, and it further ordered "that judgment is entered for [Taylor] and against [the Shields] on their Counterclaim." Id. at 20-21. The court also permanently enjoined the Shields from trespassing upon Taylor's property.

On January 9, 2012, the Shields filed a motion to correct errors stating that "[w]hile the history of Indiana case law is filled with cases which state that a prescriptive easement is obtained by the landowner's acquiescence, the Order relies instead on a dictionary definition to render 'acquiescence' as another form of consent," and they also filed a brief in support of their motion. Id. at 23. The court denied the Shields' motion on January 27, 2012.

ISSUE

The issue is whether the trial court erred in concluding that the Shields' counterclaim was not sufficiently pled to encompass a theory of easement by prescription. The trial court entered findings of fact and conclusions thereon pursuant to Ind. Trial Rule 52(A). We may not set aside the findings or judgment unless they are clearly erroneous. Menard, Inc. v. Dage-MTI, Inc., 726 N.E.2d 1206, 1210 (Ind. 2000),

10

reh'g denied. In our review, we first consider whether the evidence supports the factual findings. Id. Second, we consider whether the findings support the judgment. Id. "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." Quillen v. Quillen, 671 N.E.2d 98, 102 (Ind. 1996). A judgment is clearly erroneous if it relies on an incorrect legal standard. Menard, 726 N.E.2d at 1210. We give due regard to the trial court's ability to assess the credibility of witnesses. Id. We do not reweigh the evidence; rather we consider the evidence most favorable to the judgment with all reasonable inferences drawn in favor of the judgment. Yoon v. Yoon, 711 N.E.2d 1265, 1268 (Ind. 1999). We evaluate questions of law *de novo* and owe no deference to a trial court's determination of such questions. Kwolek v. Swickard, 944 N.E.2d 564, 570 (Ind. Ct. App. 2011) (citing McCauley v. Harris, 928 N.E.2d 309, 313 (Ind. Ct. App. 2010), reh'g denied, trans. denied), trans. denied.

The principles of notice pleadings are utilized in Indiana. Grzan v. Charter Hosp. of N.W. Ind., 702 N.E.2d 786, 793 (Ind. C. App. 1998) (citing Miller v. Mem'l Hosp. of South Bend, 679 N.E.2d 1329, 1332 (Ind. 1997)). "Ind. Trial Rule 8(A) merely requires '(1) a short and plain statement of the claim showing that the pleader is entitled to relief, and (2) a demand for the relief to which the pleader deems entitled. . . .'" Id. Also, "Ind. Trial Rule 8(F) provides that 'all pleadings shall be so construed as to do substantial justice, lead to disposition on the merits, and avoid litigation of procedural points.'" Id. at 794. "Notice pleading is designed to 'discourage battles over mere form of statement and to sweep away needless controversies that have occurred either to delay trial on the

11

merits or to prevent a party from having a trial because of mistakes in statement.'" Id. (quoting Miller, 679 N.E.2d at 1332).

"Under Indiana's notice pleading system, a pleading need not adopt a specific legal theory of recovery to be adhered to throughout the case." ARC Const. Mgmt., LLC v. Zelenak, 962 N.E.2d 692, 697 (Ind. Ct. App. 2012); see also Miller, 679 N.E.2d at 1332; State v. Rankin, 260 Ind. 228, 231, 294 N.E.2d 604, 606 (1973). Indiana's notice pleading rules do not require the complaint to state all elements of a cause of action. Zelenak, 962 N.E.2d at 697 (citing State v. Am. Family Voices, Inc., 898 N.E.2d 293, 296 (Ind. 2008), reh'g denied). Notice pleading merely requires pleading the operative facts so as to place the defendant on notice as to the evidence to be presented at trial. Id.; see also City of Clinton v. Goldner, 885 N.E.2d 67, 74 (Ind. Ct. App. 2008) (citing Noblesville Redev. Comm'n v. Noblesville Assoc.'s Ltd. P'ship, 674 N.E.2d 558, 563 (Ind. 1996)). Therefore, under notice pleading the issue of whether a complaint sufficiently pleads a certain claim turns on whether the opposing party has been sufficiently notified concerning the claim so as to be able to prepare to meet it. Id. A complaint's allegations are sufficient if they put a reasonable person on notice as to why a plaintiff sues. Id.

## ANALYSIS

The specific issue in this case is whether the Shields sufficiently pled facts claiming that their use of the dirt road over Taylor's property connecting Earl Young Road and the long bottom had established a prescriptive easement. We observe that once a prescriptive easement has been established, the right vests by operation of law.

Whitman v. Denzik, 882 N.E.2d 260, 264 (Ind. Ct. App. 2008). "However, prescriptive easements generally 'are not favored in the law.'" Id. (quoting Wilfong v. Cessna Corp., 838 N.E.2d 403, 405 (Ind. 2005) (quoting Carnahan v. Moriah Prop. Owners Ass'n, Inc., 716 N.E.2d 437, 441 (Ind.1999))). "The existence or non existence of a prescriptive easement is a question of fact." Id. (quoting Ballard v. Harman, 737 N.E.2d 411, 418 (Ind. Ct. App. 2000), reh'g denied). A party claiming the existence of a prescriptive easement must provide evidence showing "'an actual, hostile, open, notorious, continuous, uninterrupted adverse use for twenty years under a claim of right.'" Id. (quoting Wilfong, 838 N.E.2d at 406 (quoting Carnahan, 716 N.E.2d at 441)); see also Ind. Code § 32-23-1-1 ("The right-of-way, air, light, or other easement from, in, upon, or over land owned by a person may not be acquired by another person by adverse use unless the use is uninterrupted for at least twenty (20) years."). However, in Fraley v. Minger, 829 N.E.2d 476, 486 (Ind. 2005), the Indiana Supreme Court reformulated the elements of adverse possession. These new elements apply to establishing prescriptive easements, except for those differences required by the differences between fee interests and easements. Wilfong, 838 N.E.2d at 406. Therefore, a party claiming the existence of a prescriptive easement "must establish clear and convincing proof of (1) control, (2) intent, (3) notice, and (4) duration."[1] Id.

---

[1] The Court described the reformulated elements as follows:

These four elements are established by clear and convincing proof of the following:

    (1)    Control—The claimant must exercise a degree of use and control over the parcel that is normal and customary considering the characteristics of the land (reflecting the former elements of "actual," and in some ways "exclusive," possession);

13

The Shields argue that "their pleadings stated that they owned an easement across [Taylor's] land, and that they set out the facts sufficient to place [him] on notice that [their] easement may be prescriptive." Appellants' Brief at 6. The Shields argue that "they had an easement by either . . . consent or acquiescence, and that they had uninterrupted use for more than twenty years during the ownership of successive owners." Id. The Shields argue that "[a]cquiescence is at the very heart of prescriptive easement and is not mere 'consent' giving rise to license." Id.

Taylor argues in part that the "Shields' argument that a prescriptive easement was pled by reference to consent or acquiescence [] mischaracterizes the Counterclaim," noting that it "does not allege acquiescence by all owners in the chain of title," and that "[t]o the contrary, Shields allege consent or acquiescence specifically as to Taylor." Appellee's Brief at 14. Taylor argues that "[a]cquiescence was not alleged with regard to any owner of the Taylor property except for Taylor . . . who had owned the property approximately fifteen (15) years, well short of the prescriptive period of twenty (20)

---

(2)     Intent—The claimant must demonstrate intent to claim full ownership of the tract superior to the rights of all others, particularly the legal owner (reflecting the former elements of "claim of right," "exclusive," "hostile," and "adverse");

(3)     Notice—The claimant's actions with respect to the land must be sufficient to give actual or constructive notice to the legal owner of the claimant's intent and exclusive control (reflecting the former "visible," "open," "notorious," and in some ways the "hostile," elements); and,

(4)     Duration—the claimant must satisfy each of these elements continuously for the required period of time (reflecting the former "continuous" element).

Fraley v. Minger, 829 N.E.2d 476, 486 (Ind. 2005).

Wilfong, 838 N.E.2d at 406 n.1.

years." Id. Taylor argues that "[t]he reference to acquiescence is not in context with the continuous, uninterrupted use during ownership by Taylor's predecessors in interest, but only during Taylor's limited period of ownership." Id.

We begin by discussing the element of duration. As noted above, Ind. Code § 32-23-1-1 establishes that a prescriptive easement must be shown to have been in existence uninterrupted for at least twenty years. Indeed, "Indiana cases have also required that the evidence demonstrate an actual, hostile, open, notorious, continuous, uninterrupted, and adverse use for twenty (20) years under a claim of right, *or* such continuous, adverse use with knowledge and acquiescence of the owner." Capps v. Abbott, 897 N.E.2d 984, 988 (Ind. Ct. App. 2008) (citing Downing v. Owens, 809 N.E.2d 444, 450 (Ind. Ct. App. 2004), trans. denied; Greenco, Inc. v. May, 506 N.E.2d 42, 45 (Ind. Ct. App. 1987); Powell v. Dawson, 469 N.E.2d 1179, 1181 (Ind. Ct. App. 1984), reh'g denied). "It is the general rule that where there has been the use of an easement for twenty (20) years which is unexplained, the presumption is that it is under a claim of right, and adverse, and is sufficient to establish title by prescription unless such use is contradicted or explained." Id. Also,

> [t]he party asserting the prescriptive right may make a prima facie case by showing an open and continuous use of another's land with the owners [sic] knowledge, creating a rebuttable presumption that such use is adverse and under a claim of right. The presumption of a grant arises from proof of an uninterrupted adverse use for the prescriptive period. However, the presumption of a prescriptive right may be defeated by proof that the use was by permission or not under a claim of right.

Greenco, 506 N.E.2d at 45-46 (citations omitted).

15

As observed in <u>Capps</u>, the Indiana Supreme Court in <u>Wilfong</u> "found that Wilfong had not established a prescriptive easement to use a private road across the Cessna family's property because there was no evidence establishing that use of the land by Wilfong's predecessors-in-title had been adverse to the interest of the Cessna family." 897 N.E.2d at 989. In so holding, "the Court noted the trial court's finding that the Cessna family had granted Wilfong's predecessors-in-title permission to use the roadway." <u>Id.</u>

Here, our concern is with the operative facts pled by the Shields in their counterclaim rather than with the evidence presented at trial. However, the principle exhibited in <u>Wilfong</u> applies with equal force here to defeat the Shields' claim. As noted above, the Shields pled the following in their counterclaim:

> 3. From the late 1950's and for approximately 50 years thereafter, the Shields family has had continuous, uninterrupted access to their Back Twenty Acres by an easement *granted* by Frank Hudoff – the former owner of the Taylor property – *then* by John and Phyllis Chute [sic] – the subsequent owners of the Taylor property – and then, most recently, by plaintiff's own consent or acquiescence.

> 3. [sic] *All of the owners* of the Taylor real estate since the late 1950's *have agreed with Shields' right to use the easement* across the Taylor real estate (Taylor's driveway) to access the Back Twenty Acres, and all the neighbors for the past 50 years have known of this. There has <u>never</u> been a question or controversy about such use until the Shields timbered some of their land in August 2010.

> 4. Even Taylor himself did not contest defendants' use of the right of way until Taylor saw them cutting timber and taking it out across the easement. At that time, Taylor demanded exorbitant fees from the timbering for use of the easement, which the Shields refused to pay.

Appellants' Appendix at 6-7 (emphases added).

Thus, regardless of whether the Shields' use of the phrase "consent or acquiescence" in their counterclaim alleged that their use of Taylor's land during Taylor's ownership was prescriptive in nature, it is clear that the Shields also stated in their pleading that such "acquiescence" existed only on Taylor's part and that originally they used the dirt road based upon permission granted by the Hudoffs and subsequently the Chukes. Use of land for access is not adverse if that use is permissive in nature. See Bass v. Salyer, 923 N.E.2d 961, 967 (Ind. Ct. App. 2010) (noting that "[i]f the facts and circumstances of a case lead to the conclusion that the use[] was merely permissive, they are fatal to the prescription") (quoting Brown v. Heidersbach, 172 Ind. App. 434, 444, 360 N.E.2d 614, 621 (1977)). Indeed, it would be illogical to read a pleading as stating that a landowner *granted* to another a *prescriptive* easement, for prescriptive easements are established by operation of law based upon adverse use as defined in Wilfong and Fraley. Wilfong, 838 N.E.2d at 406 n.1 (citing Fraley, 829 N.E.2d at 486); Whitman, 882 N.E.2d at 264 ("[O]nce a prescriptive easement has been established, the right vests by operation of law.") (citing Downing, 809 N.E.2d at 452); see also Bass, 923 N.E.2d at 965 (noting that whether a prescriptive easement exists is a question of fact). Also, our conclusion is bolstered by the prayer for relief contained in the Shields' counterclaim, in which they asked for monetary damages in the amount of $300 only and did not request that the court enter an order declaring a prescriptive easement over Taylor's property.

The Shields in their counterclaim did not plead that they used the dirt road on Taylor's property in an adverse manner for twenty years or more. Accordingly, we

conclude that the court did not err in finding that their counterclaim alleged only consensual entry or a consensual right of access to Taylor's property.

For the foregoing reasons, we affirm the trial court's December 9 Order and denial of the Shields' motion to correct errors.

Affirmed.

FRIEDLANDER, J., and PYLE, J., concur.