**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Feb 13 2014, 9:56 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**MARTIN A. HARKER**
**ALBERT C. HARKER**
Kiley, Harker & Certain
Marion, Indiana

ATTORNEY FOR APPELLEE:

**THOMAS R. HALEY III**
House Reynolds & Faust LLP
Carmel, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| CHARLES POLING, | ) | |
| | ) | |
| Appellants-Plaintiffs, | ) | |
| | ) | |
| vs. | ) | No. 27A02-1307-PL-585 |
| | ) | |
| PROPERTY OWNERS INSURANCE COMPANY, | ) | |
| | ) | |
| Appellee-Defendant. | ) | |

APPEAL FROM THE GRANT SUPERIOR COURT
The Honorable Marianne L. Vorhees, Special Judge
Cause No. 27D02-1002-PL-38

**February 13, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BRADFORD, Judge**

**CASE SUMMARY**

In January of 2009, Appellant-Plaintiff Charles Poling's home was damaged by a fire. Poling subsequently filed an insurance claim with Appellee-Defendant Property Owners Insurance Company ("Property Owners"). Poling initiated the instant matter after the parties were unable to agree upon the amount of the loss covered by Poling's insurance policy.[1] In doing so, Poling sought the appointment of an Umpire who, pursuant to the terms of the policy, would determine the amount of the loss for which Property Owners was liable. It is undisputed that pursuant to the terms of the policy, the parties were bound by the Umpire's determination regarding the amount of the loss. It is also undisputed that at some point after Poling initiated the instant matter, an Umpire was appointed, the Umpire issued an appraisal award containing a determination regarding the amount of the loss for which Property Owners was liable, and Property Owners paid Poling the amount of the loss, as determined by the Umpire.

On March 7, 2013, Property Owners filed a motion to dismiss, claiming that they had completely satisfied their obligations to Poling under the appraisal award and no further amounts were owed to Poling. Poling objected to Property Owners's motion, claiming that the first amended complaint also set forth a tort claim that Property Owners had acted in bad faith in contesting the amount of the loss. Poling requested permission to file a second amended complaint for the purpose of "clarifying" the allegations contained in the first amended complaint and to add a new defamation claim. After considering the pleadings and

---

[1] Poling subsequently filed a first amended complaint, which was identical to his original complaint except that he attached the insurance policy in question as an exhibit to the first amended complaint.

exhibits presented by the parties, the trial court issued an order denying Poling's request to file a second amended complaint and dismissing the instant matter.

Upon appeal, Poling contends that the trial court erroneously dismissed the instant matter and abused its discretion in denying his request to amend his complaint for a second time. We affirm.

### FACTS AND PROCEDURAL HISTORY

In December of 2009, Poling's home was destroyed by a fire. At the time of the fire, Poling's home was covered by an insurance policy issued by Property Owners. After Poling submitted his claim, Property Owners conducted an investigation into Poling's loss. Property Owners made payments to Poling for some of the loss and contested some of the amount of loss claimed by Poling.

The insurance policy provided that if the parties were unable to agree on a settlement amount, each party could retain its own appraiser to assess the value of the loss. If the parties were still unable to agree on a settlement amount after receiving the appraisers' assessments, the parties could then request that an Umpire be appointed to consider the assessments of each appraiser and to issue an appraisal award, by which the parties would then be bound. The insurance policy further provided that if the parties were unable to agree on an Umpire, the parties could initiate court proceedings seeking the appointment of an Umpire.

On February 1, 2010, Poling filed a complaint alleging that Property Owners had refused to agree to an Umpire and requesting that the trial court appoint an Umpire. Property Owners filed a motion to dismiss the matter because Poling had failed to attach the insurance

3

policy as an exhibit to the complaint as required by law. On June 2, 2010, the trial court allowed Poling to file his first amended complaint. The first amended complaint was a verbatim copy of the original complaint but included the insurance policy as an exhibit.

On March 7, 2013, Property Owners filed a motion to dismiss. In support of its motion, Property Owners claimed that an Umpire had been appointed, the Umpire had reviewed the materials submitted by the appraisers chosen by the parties, and the Umpire had issued an appraisal award setting forth the amount owed to Poling by Property Owners. Property Owners also claimed that it had satisfied the Umpire's appraisal award and had paid the full sum of the award as determined by the Umpire. Thus, Property Owners argued that there were no remaining claims by Poling against Property Owners and, as a result, the case should be dismissed with prejudice.

After being granted additional time to respond by the trial court, Poling objected to Property Owners's motion. Poling did not dispute Property Owners's assertion that it had satisfied the Umpire's appraisal award, but argued that the case should not be dismissed because the first amended complaint also included the claim that Property Owners had committed a tortious breach of its duty to deal with him in good faith. Poling also requested permission to file a second amended complaint for the purpose of "clarifying" the allegations contained in the first amended complaint and adding a defamation claim against Property Owners.

On June 11, 2013, the trial court issued an order granting Property Owners motion to dismiss. The trial court also denied Poling's request for permission to file a second amended

4

complaint. This appeal follows.

## DISCUSSION AND DECISION

### I. Whether the Trial Court Erred in Granting
### Property Owners's Motion to Dismiss

Poling contends that the trial court erroneously granted Property Owners's motion to dismiss. Initially, we note that Property Owners attached external material, *i.e.*, exhibits that were outside of the pleadings, to its motion to dismiss. Trial Rule 12(B) provides that a motion to dismiss shall be treated as a motion for summary judgment if a party presents external evidence in support of its motion. In such cases, the parties shall be given reasonable opportunity to present all information pertinent to a motion for summary judgment. *See* Trial Rule 12(B). If a trial court does not afford the parties a reasonable opportunity to present such material, the trial court commits reversible error. *Dixon v. Siwy*, 661 N.E.2d 600, 604 (Ind. Ct. App. 1996). "However, when the trial court does in fact afford the parties a reasonable opportunity to present external material, the failure to specifically designate a motion as one for summary judgment instead of dismissal under 12(B)(6) is deemed harmless error, and the appellate court will simply review the case as if arising from a grant of summary judgment." *Id*.

In this case, the record demonstrates that Poling was given a reasonable opportunity to respond to Property Owners's motion. Poling was also given a reasonable opportunity to present material external to the pleadings in opposition to the motion. Thus, any error by the trial court in considering the external information is harmless, and we will treat the instant appeal as if it comes from a grant of summary judgment. *See id.* at 605.

5

"On appeal, a trial court's grant of summary judgment is 'clothed with a presumption of validity.'" *Rosi v. Bus. Furniture Corp.*, 615 N.E.2d 431, 434 (Ind. 1993) (citing *Ind. Dep't of State Revenue v. Caylor-Nickel Clinic, P.C.*, 587 N.E.2d 1311, 1312-13 (Ind. 1992)).

> We review a trial court's grant of summary judgment de novo, *City of Indianapolis v. Buschman*, 988 N.E.2d 791, 793 (Ind. 2013), and we will affirm "only if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." *Overton v. Grillo*, 896 N.E.2d 499, 502 (Ind. 2008); *see also* Ind. Trial Rule 56(C). Like the trial court, we construe all evidence and resolve all doubts in favor of the non-moving party, *Town of Avon v. W. Cent. Conservancy Dist.*, 957 N.E.2d 598, 602 (Ind. 2011), so as to avoid improperly denying him his day in court. *Jordan v. Deery*, 609 N.E.2d 1104, 1107 (Ind. 1993).

*Miller v. Dobbs*, 991 N.E.2d 562, 564 (Ind. 2013). "The appellant bears the burden of proving that the trial court erred in determining that there are no genuine issues of material fact and that the moving party was entitled to judgment as a matter of law." *Rosi*, 615 N.E.2d at 434.

In the instant matter, the first amended complaint alleged, in relevant part, as follows:

> 2. In 2009, when [Poling] was in compliance with the terms of the [insurance policy], a fire completely destroyed [Poling's] [h]ome.
> 3. Pursuant to the terms of the [insurance policy], [Poling] and Property Owners entered into negotiations to compensate [Poling] for the loss of [his] [h]ome, its contents, and loss of use.
> 4. Property Owners made a payment to [Poling] for part of the contents, but the parties are at a stalemate regarding any other payments.
> 5. The [insurance policy] provides that if there is a disagreement as to the amount owed [Poling] by Property Owners for a loss, appraisers for both sides shall choose a third party (Umpire) to appraise the losses. Thereafter, the agreement of any one (1) of the two (2) adjusters and the Umpire compromises the losses for the agreement.
> 6. The [insurance policy] also provides that if the parties cannot agree on an Umpire, either can petition a court of competent jurisdiction to appoint an

6

Umpire, who in consultation and agreement with one of the parties' appraisers shall decide on a reasonable amount due [Poling] by Property Owners for any and all losses covered by the [insurance policy] and incurred by [Poling].

7. The [insurance policy] requires Property Owners to pay the total amount so determined to [Poling] within thirty (30) days.

8. Property Owners has failed to comply with the [insurance policy] terms. As a result, it has breached the terms of the policy.

9. Property Owners has failed and refused to agree to the appointment of an Umpire.

10. As a result of the intentional actions of Property Owners, contrary to the [insurance policy] terms and its duty to reasonably pay insurance claims presented by its insured, it has been necessary for [Poling] to employ the services of an attorney and an independent public appraiser to process and prosecute a claim for amounts he is clearly owed as a result of his loss.

11. [Poling] has been without a residence or reasonable compensation for [his] loss.

Appellant's App. pp. 24-25. In making the above-stated allegations, Poling requested that the trial court appoint a qualified person as an Umpire pursuant to the terms of the insurance policy. Poling also requested that the trial court assess "reasonable damages as may be granted by law for the frustration, inconvenience, and other losses suffered by [Poling] as a result of the actions of Property Owners to artificially extend the period of time it retained the money due [Poling] for his losses in an attempt to force [Poling] to compromise his claim for less than his actual loss, using Property Owners much superior bargaining leverage and virtual unlimited financial assets[.]" Appellant's App. p. 25.

In support of its motion, Property Owners claimed that an Umpire had been appointed, the Umpire had reviewed the materials submitted by the appraisers chosen by the parties, and the Umpire had issued an appraisal award setting forth the amount owed to Poling by Property Owners. Property Owners also claimed that it had satisfied the Umpire's appraisal award and had paid the full sum of the award as determined by the Umpire. Thus, Property

Owners argued that there were no remaining claims by Poling against Property Owners and, as a result, the case should be dismissed with prejudice. Poling did not dispute Property Owners's assertion that it had satisfied the Umpire's appraisal award, but argued that the case should not be dismissed because the first amended complaint also included the claim that Property Owners had committed a tortious breach of its duty to deal with him in good faith. Property Owners, for its part, argued that the allegations contained in the first amended complaint were not sufficient to put it on notice of the alleged tort claim.

We note that "[t]he principles of notice pleading are utilized in Indiana." *Shields v. Taylor*, 976 N.E.2d 1237, 1244 (Ind. Ct. App. 2012). Indiana's notice pleading rules do not require a pleading to adopt a specific legal theory of recovery to be adhered to throughout the case or require the complaint to state all elements of a cause of action. *Id*. at 1244-45. The notice pleading rules merely require that a pleading contain the operative facts so as to place the defendant on notice as to the evidence to be presented at trial. *Id*. at 1245. Therefore, "the issue of whether a complaint sufficiently pleads a certain claim turns on whether the opposing party has been sufficiently notified concerning the claim so as to be able to prepare to meet it." *Id*. "A complaint's allegations are sufficient if they put a reasonable person on notice as to why a plaintiff sues." *Id*.

The Indiana Supreme Court has recognized the claim against an insurance company of tortious breach of its duty to deal with its insured in good faith. *Erie Ins. Co. v. Hickman by Smith*, 622 N.E.2d 515, 519 (Ind. 1993). "'The insurer's obligation of good faith and fair dealing includes an obligation to refrain from causing an unfounded delay in making

8

payment; making an unfounded refusal to pay policy proceeds; exercising an unfair advantage to pressure an insured into settlement of his claim; and deceiving the insured.'" *Hoosier Ins. Co. v. Audiology Found. of Am.*, 745 N.E.2d 300, 310 (Ind. Ct. App. 2001) (quoting *Cnty. Line Towing, Inc. v. Cincinnati Ins. Co.*, 714 N.E.2d 285, 291 (Ind. Ct. App. 1999), *trans. denied*). The cause of action, however, does not arise every time an insurance claim is erroneously denied, even if it is ultimately determined that the insurer breached its contract. *Erie*, 622 N.E.2d at 520. "Similarly, the lack of diligent investigation alone is not sufficient to support an award." *Id*. Furthermore, a good faith dispute about whether the insured has a valid claim or the amount of a valid claim will not support the grounds for recovery in tort for the breach of the obligation to exercise good faith. *Id*.

On appeal, Poling argues that the allegations contained in the first amended complaint were sufficient to put a reasonable person on notice of the claim that Property Owners committed a tortious breach of its duty to deal with him in good faith. Specifically, Poling argues that paragraph ten of the first amended complaint and the second paragraph of his prayer for relief put Property Owners on notice of the alleged tort claim. Upon review, we cannot agree with Poling.

Again, paragraph ten of the first amended complaint reads as follows,

10. As a result of the intentional actions of Property Owners, contrary to the [insurance policy] terms and its duty to reasonably pay insurance claims presented by its insured, it has been necessary for [Poling] to employ the services of an attorney and an independent public appraiser to process and prosecute a claim for amounts he is clearly owed as a result of his loss.

Appellant's App. p. 25. We conclude that paragraph ten is insufficient to put Property

9

Owners on notice of the alleged tort claim as it does not contain any allegation of the type of tortious behavior discussed by *Erie* or *Hoosier Ins.* Property Owners was under no duty to accept Poling's claim at face value and did not breach any duty owed to Poling merely by disputing the amount claimed by Poling. *See Hoosier Ins.*, 745 N.E.2d at 311 (providing that an insurance company has the right to a good faith dispute with its insured with respect to coverage); *Erie*, 622 N.E.2d at 520 (providing that a good faith dispute about the amount of a valid claim will not support the grounds for recovery in tort for the breach of the obligation to exercise good faith).

Further, the undisputed designated evidence indicates that Property Owners did not act contrary to the terms of the insurance policy, but rather in a manner specifically provided for by the policy. The parties agree that the insurance policy provided that if the parties were unable to agree on a settlement amount, each party could retain its own appraiser and the parties could request an Umpire to consider the assessments of each appraiser and issue an award, by which the parties were then bound. Moreover, as was the case here, if the parties were unable to agree on an Umpire, the parties could initiate court proceedings seeking the appointment of an Umpire. The fact that Poling asserted that he felt it necessary to employ the services of an attorney and an independent appraiser in order to act in accordance with the terms of the insurance policy is not sufficient to put Property Owners on notice of a claim that it committed a tortious act of bad faith in when dealing with Poling's claim.

Poling also argues that the second paragraph of his prayer for relief was sufficient to put Property Owners on notice of the alleged tort claim. The second paragraph reads as

10

follows:

> 2. Assessing reasonable damages as may be granted by law for the frustration, inconvenience, and other losses suffered by [Poling] as a result of the actions of Property Owners to artificially extend the period of time it retained the money due [Poling] for his losses in an attempt to force [Poling] to compromise his claim for less than his actual loss, using Property Owners much superior bargaining leverage and virtual unlimited financial assets[.]

Appellant's App. p. 25. While this paragraph could possibly be said to put Property Owners on notice of Poling's belief that it acted with tortious conduct, *i.e.*, with undue delay and in a manner which Poling believed could be seen as trying to use its superior bargaining position to force Poling to settle, it has long been held that "the nature of the action must be determined from the substantive facts pleaded and not from the prayer for relief." *Monnett v. Turpie*, 132 Ind. 482, 485, 32 N.E. 328, 329 (1892) (internal citations omitted). Rather, the statement of the relief demanded may only be considered "in connection with the other averments." *Id*.

Again, none of the allegations contained in the first amended complaint are sufficient to put Property Owners on notice of Poling's alleged tort claim. The second paragraph of Poling's prayer for relief is the only portion of the first amended complaint that could possibly be read as making any statement that could relate to a claim that Property Owners committed a tortious failure to act in good faith when dealing with Poling. In light of the long-standing precedent that the nature of an action must be determined from the substantive facts pleaded and not only from the prayer for relief, we do not believe that paragraph two of the prayer for relief, without more, is sufficient to put Property Owners on notice of Poling's alleged tort claim.

11

In light of our conclusion that the allegations set forth in the first amended complaint were not sufficient to put Property Owners on notice of the alleged tort claim, coupled with the undisputed fact that Property Owners has satisfied the appraisal award by paying all sums due to Poling, we further conclude that the trial court did not err in granting Property Owner's request to dismiss Poling's lawsuit.

## II. Denial of Poling's Request to File a Second Amended Complaint

On May 17, 2013, over three years after Poling filed his initial complaint and nearly three years after Poling filed his first amended complaint, Poling moved for leave to file a second amended complaint. The new complaint sought to "clarify the allegations in the first amended complaint" and to add a new count alleging defamation. Appellant's App. p. 126. On June 11, 2013, the trial court denied Poling's motion, finding that "[i]t would be unfair to require [Property Owners] to defend itself as to these claims and conduct discovery on claims which relate to a fire loss well over four years old" and that allowing Poling to amend the complaint would be futile. Appellant's App. p. 9.

> "Amendments to the pleadings are to be liberally allowed in order that all issues involved in a lawsuit are presented to the jury." *Mullen v. Cogdell* (1994) Ind. App., 643 N.E.2d 390, 399, *trans. denied* (citing *Allied Mills, Inc. v. P.I.G., Inc.* (1983) Ind. App., 454 N.E.2d 1240). However, "[t]he trial court has broad discretion in granting or denying amendments to the pleadings and we will reverse only upon a showing of abuse of discretion." *Id.*; *See also, Freedom Express, Inc. v. Merchandise Warehouse Co., Inc.* (1995) Ind. App., 647 N.E.2d 648; *Brenneman Mechanical v. First Nat. Bank* (1986) Ind. App., 495 N.E.2d 233, *trans. denied; B & D Corp. v. Anderson, Clayton & Co.* (1979) 180 Ind. App. 115, 387 N.E.2d 476. "An abuse of discretion is an erroneous conclusion and judgment, clearly against the logic and effect of the facts and circumstances before the court or the reasonable deductions to be drawn therefrom." *Freedom Express*, *supra*, 647 N.E.2d at 653.
> Trial Rule 15(A) provides that a complaint may be amended by leave of

the trial court and that the trial court should grant such leave "when justice so requires." Ind. T. R. 15(A). In *Palacios v. Kline* (1991) Ind. App., 566 N.E.2d 573, this court articulated several factors to which a trial court should look in determining whether justice requires the leave be granted. Those factors include undue delay, bad faith, or dilatory motive on the part of the movant and undue prejudice to the opposing party. *Id.* at 575.

*Gen. Motors Corp. v. Northrop Corp.*, 685 N.E.2d 127, 142 (Ind. Ct. App. 1997).

In the instant matter, Poling sought to amend his complaint a second time for the claimed purpose of "clarifying" the allegations set forth in the first amended complaint and asserting a new claim, both based in tort law, against Property Owners. In denying Poling's request, the trial court noted that the "alleged events supporting the new claims occurred between January 21, 2009, and June 7, 2010, over [t]hree [y]ears ago." Appellant's App. p. 9. Poling did not assert that he could not have "clarified" the allegations contained in the first amended complaint at an earlier date, that he had been unaware of the new claim that he sought to add to the complaint, or that he could not have raised said claim at an earlier date. Further, Poling does not assert that he had discovered new evidence which might justify the nearly three-year delay in requesting permission to amend his complaint for a second time. As such, we conclude that it was reasonable to assume that such delay is undue and that it would be unjust to force Property Owners to defend against the previously unclear or unraised allegations contained in Poling's second amended complaint. The trial court acted within its discretion in denying Poling's second request to amend his complaint.

## CONCLUSION

Having concluded that the trial court did not err in granting Property Owners's request to dismiss Poling's lawsuit, and that the trial court acted within its discretion in denying

13

Poling's second request to amend his complaint, we affirm the judgment of the trial court.

The judgment of the trial court is affirmed.

MATHIAS, J., and PYLE, J., concur.